HARBISON v SECRETARY OF STATE

Docket No. 76787. Submitted October 11, 1984, at Detroit.—Decided
August 28, 1985.

Arthur L. Harbison was stopped by police while driving. He
refused to submit to a breath-analysis test. The police had a
departmental policy that they would not administer a breath-
analysis test after a refusal unless it was requested within one
hour of a refusal. Harbison was not informed of this policy. The
Secretary of State suspended his operator's license for wrongful
refusal to take the breath-analysis test. Harbison appealed and
the Wayne Circuit Court, Harry J. Dingeman, Jr., J., affirmed.
Harbison appealed. *Held:*

Even though Harbison thought that once he refused to take
the test he could not change his mind, the police were under
the obligation to tell him of the department's policy.

Reversed.

C. M. FORSTER, J., dissented. He would hold that the police
did not have such a duty. He would affirm.

OPINION OF THE COURT

1. AUTOMOBILES — INTOXICATING LIQUORS — BLOOD-ALCOHOL TEST —
   STATUTES.

   A person charged with driving a vehicle while under the influ-
   ence of intoxicating liquor shall be informed that: (1) he has a
   right to demand a chemical test; (2) if he takes a chemical test
   administered at the request of a police officer he may have a
   person of his own choosing administer a test; (3) he has the
   option to take only the breath test; and (4) he has a right to

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 296 *et seq.*
Am Jur 2d, Statutes §§ 211, 212.
Necessity and sufficiency of proof that tests of blood alcohol concen-
tration were conducted in conformance with prescribed methods.
96 ALR3d 745.
Duty of law enforcement officer to offer suspect chemical sobriety
test under implied consent law. 95 ALR3d 710.
Construction and application of statutes creating presumption or
other inference of intoxication from specified percentages of
alcohol present in system. 16 ALR3d 748.

refuse the test and the consequences of such refusal must be explained to him.

Dissent by C. M. Forster, J.

2. Statutes — Judicial Construction.

An established principle of statutory construction is that the express mention in a statute of one thing implies the exclusion of other similar things.

*Robert A. Hadous,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *E. David Brockman* and *David K. Foust,* Assistants Attorney General, for the Secretary of State.

Before: V. J. Brennan, P.J., and T. M. Burns and C. M. Forster,* JJ.

Per Curiam. Arthur Lee Harbison appeals as of right from a circuit court order affirming a decision of the Secretary of State, pursuant to MCL 257.625(f); MSA 9.2325(6), to suspend his driver's license for six months for an unreasonable refusal to take a breath-analysis test. He claims that the decisions of the circuit court and the Secretary of State were inconsistent with the rule stated by this Court in *People v Castle,* 108 Mich App 353; 310 NW2d 379 (1981).

In *Castle,* the defendant initially refused to take the test without first consulting with his attorney. The attorney arrived at the police station 70 minutes later and, after consulting with the defendant, requested that a breath-analysis test be administered. Relying on a standard departmental policy, the police refused to administer a test because it had not been requested within one hour of the initial refusal. Defendant had not previously

* Circuit judge, sitting on the Court of Appeals by assignment.

been informed of this policy. This Court held, at
108 Mich App 357:

"Pursuant to the statute, any person charged with
driving a vehicle while under the influence of intoxicat-
ing liquor shall be informed: (1) he has a right to
demand a test, (2) if he takes a chemical test adminis-
tered at the request of a police officer he may have a
person of his own choosing administer a test, (3) he has
the option to take only the breath test, and (4) he has a
right to refuse the test and the consequences of such a
refusal.

"We are guided by these statutory requirements to
hold that any person charged with DUIL must be in-
formed of police regulations and rules, if any, that
materially affect him to insure that the accused has an
opportunity to make an informed decision. This is
particularly so when one considers the impact of the
choice and the fact that *the* person arrested does not
have the assistance of counsel in deciding whether to
submit to a test. See *Holmberg v 54-A Judicial Dist
Judge,* 60 Mich App 757; 231 NW2d 543 (1975).

"In this case, defendant was deprived of the opportu-
nity to make a knowing choice of whether to submit to
the test when police failed to inform him timely of
material departmental policy. We do not intimate an
opinion in this decision as to the propriety of the
departmental policy. We do say that police policy which
prohibits a defendant from demanding a chemical test
after a prescribed time must first be explained to the
defendant, enabling him to make an informed decision."
(Emphasis added.)

Here, as in *Castle,* the department had a policy
of not administering a breath-analysis test if it
was not requested within one hour of an initial
refusal. It is not disputed that Harbison was not
informed of this policy.

Even though Harbison thought that once he
refused to take the test he could not change his
mind, the police were under the obligation to tell

him of department policies. In fact, it is more than likely that, after thinking it over and after the initial trauma of arrest, he would have decided to change his mind.

Reversed.

C. M. Forster, J. *(dissenting).* I respectfully dissent. Here, in contrast to *People v Castle,* 108 Mich App 353; 310 NW2d 379 (1981), the failure of the police to tell Harbison about their one-hour policy was not material. In *Castle,* the defendant was lured into postponing his final decision until it was too late to take the test by the failure of the police to tell him of their one-hour policy. Here, Harbison claims to have thought that his initial decision was final. He never thought he could take the test later, never attempted to consult with an attorney, and never asked to take the test. On this record, the decision of the Secretary of State was consistent with the rule stated in *Castle.*

The majority comments:

"Even though Harbison thought that once he refused to take the test he could not change his mind, the police were under the obligation to tell him of department policies. In fact, it is more than likely that, after thinking it over and after the initial trauma of arrest, he would have decided to change his mind."

I cannot agree that the police had to give Harbison an opportunity to change his mind after he initially refused to take the test. See MCL 257.625d; MSA 9.2325(4):

"If a person refuses the request of a peace officer to submit to a chemical test offered pursuant to section 625a, a test shall not be given without a court order."

In light of this statute, I question whether the

police had the authority to allow him to change his mind.

See also *Mackey v Montrym,* 443 US 1; 99 S Ct 2612; 61 L Ed 2d 321 (1979), in which the Court found no due process violation in a Massachusetts statute which mandated suspension of drivers' licenses without a presuspension hearing for refusal to submit to a breath-analysis test upon arrest for driving while intoxicated. The Court pointed out, 443 US 14-15:

"The allegedly 'factual' dispute that he claims a constitutional right to raise and have determined by the Registrar prior to his suspension really presents questions of law; namely, whether the state court's subsequent finding that the police *later* refused to administer a breath-analysis test at Montrym's request is binding on the Registrar as a matter of collateral estoppel; and, if so, whether that finding undermines the validity of Montrym's suspension, which may well be justified under the statute solely on the basis of Montrym's initial refusal to take the breath-analysis test and notwithstanding the officer's subsequent refusal to honor Montrym's belated request for the test. *The Commonwealth must have the authority, if it is to protect people from drunk drivers, to require that the breath-analysis test record the alcoholic content of the bloodstream at the earliest possible moment."* (Emphasis added, footnote deleted).

I take this opportunity to express my disagreement with the rule stated in *Castle.* The *Castle* Court explained its reasoning as follows, 108 Mich App 357:

"The Legislature has provided an agonizing choice for one accused of DUIL. But the legislation does require that the tactical choice allowed be knowingly made. Pursuant to the statute, any person charged with driving a vehicle while under the influence of intoxicating liquor shall be informed: (1) he has a right to demand a

test, (2) if he takes a chemical test admisistered at the request of a police officer he may have a person of his own choosing administer a test, (3) he has the option to take only the breath test, and (4) he has a right to refuse the test and the consequences of such refusal.

"We are guided by these statutory requirements to hold that any person charged with DUIL must be informed of police regulations and rules, if any, that materially affect him to insure that the accused has an opportunity to make an informed decision. This is particularly so when one considers the impact of the choice and the fact that the person arrested does not have the assistance of counsel in deciding whether to submit to a test. See, *Holmberg v 54-A Judicial Dist Judge,* 60 Mich App 757; 231 NW2d 543 (1975)."

An established principle of statutory construction is that the express mention in a statute of one thing implies the exclusion of other similar things *(expressio unius est exclusio alterius).* See, for example, *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971). The *Castle* panel stood this principle on its head when the panel concluded that a statute listing certain rights of which a person charged with DUIL must be informed implicitly required that such a person also be informed of other matters not mentioned in the statute. The *Castle* rule cannot logically be derived from the statute on which it was ostensibly based.

The *Castle* rule did not purport to be based on constitutional requirements of due process, and I cannot see how constitutional rights of due process could be said to support the *Castle* rule. Michigan statutes go far beyond the requirements of due process to afford protection to drivers who refuse to take chemical tests. See *Mackey v Montrym, supra,* and *South Dakota v Neville,* 459 US 553; 103 S Ct 916; 74 L Ed 2d 748 (1983). No authority has ever gone so far as to hold that a waiver of

rights must be prefaced by information concerning all rules and regulations which might materially affect the waiver. Compare, for example, the discussion in *Guilty Plea Cases,* 395 Mich 96, 121-124; 235 NW2d 132 (1975), of the information a defendant must be given to support a valid plea of guilty. The *Castle* rule merely makes it more difficult to suspend the licenses of intoxicated drivers without providing any significant offsetting advantages in fairness of the proceedings. The *Castle* rule is nothing more than judicial legislation. The majority decision in the case at bar is not controlled by *Castle* but is simply an unwarranted extension of that ruling.

I would affirm.