PEOPLE v WURM

Docket No. 93335. Submitted December 4, 1986, at Grand Rapids.
Decided March 2, 1987.

James C. Wurm, Jr., was charged in district court with operating
a vehicle while under the influence of intoxicating liquor,
operating a vehicle while having a blood alcohol content of 0.10
percent or more, and being a second offender. Defendant moved
that the results of a blood alcohol test be suppressed on the
ground that he was not informed prior to being subjected to the
procedure that it was the police department's policy that if a
drinking and driving suspect refuses to take a breath test, the
arresting officer attempts to get a warrant to draw a blood
sample from the suspect. Defendant declined to submit to a
breath test, whereupon the arresting officer took defendant to
the home of a magistrate, who signed a court order authorizing
withdrawal of blood from defendant. The district court found
that the fact that defendant was told that if he refused a
breath test a chemical test would not be given to him without a
court order sufficiently complied with the law and denied the
motion to suppress the test results. Defendant appealed to the
Kent Circuit Court, which reversed, finding that a defendant
has a right to know that the police department's actual policy
is to attempt to obtain a court order for a blood test before the
defendant decides whether or not to voluntarily submit to the
breath test. The circuit court, Woodrow A. Yared, J., granted
defendant's motion to suppress the test results. The people
appealed by leave granted.

The Court of Appeals held:

The results of a court-ordered chemical test administered to
an accused drinking driver need not be suppressed where the
arresting officer failed to inform the accused that if he refused
to voluntarily submit to a breath test a court order would be
obtained to compel a blood alcohol test and instead told the

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 377-380.
Admissibility in criminal case of blood-alcohol test where blood was
taken despite defendant's objection to submit to test. 14 ALR4th
690.

accused that a court order could be obtained pursuant to statute to compel the blood test. It is sufficient that the accused was told that if he refused to voluntarily submit to a breath test a court order could be obtained to compel the blood test. The decision of the circuit court is reversed, the decision of the district court is reinstated, and the case is remanded to the district court for further proceedings.

Reversed and remanded.

AUTOMOBILES — INTOXICATING LIQUORS — BLOOD-ALCOHOL TEST.

The results of a court-ordered chemical test administered to an accused drinking driver should not be suppressed where the arresting officer fails to inform the accused that it is that police department's policy that if an accused drinking driver refuses to voluntarily submit to a breath test a court order will be obtained to compel a blood alcohol test and instead tells him that a court order can be obtained pursuant to statute to compel him to submit to the blood test (MCL 257.625a; MSA 9.2325[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*Rhoades, McKee & Boer* (by *Daniel L. Elve*), for defendant.

Before: D. F. WALSH, P.J., and HOOD and R. J. TAYLOR,* JJ.

PER CURIAM. The prosecution appeals by leave granted pursuant to MCL 770.12(1)(a); MSA 28.1109(1)(a) from a circuit court order that reversed a district court order and granted defendant's motion to suppress the results of a blood alcohol test. The prosecutor argues that the circuit court erred in holding that a driver arrested for driving under the influence of intoxicating liquor (DUIL), MCL 257.625; MSA 9.2325, must be advised not only that a chemical test "shall not be given

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

without a court order," MCL 257.625a(6); MSA 9.2325(1)(6), but also that it is the local police department's policy to obtain a warrant for a blood alcohol measurement if the driver refuses to take a breath test. We agree and reverse the circuit court's suppression order.

Defendant was charged with operating a vehicle while under the influence of intoxicating liquor, MCL 257.625(1): MSA 9.2325(1), and with operating a vehicle while having a blood alcohol content of 0.10 percent or more, MCL 257.625(2); MSA 9.2325(2). Defendant was also charged as a second offender under MCL 257.625(5); MSA 9.2325(5). Defendant's vehicle was stopped at approximately 2:30 A.M. by a City of Wyoming police officer. After asking defendant to perform some dexterity tests outside his vehicle, the officer arrested him and transported him to the police station, where, at 2:57 A.M., he was read his rights concerning chemical tests in accordance with MCL 257.625a(5) and (6); MSA 9.2325(1)(5) and (6). The reading of defendant's rights was videotaped.

The police officer then asked defendant whether he would submit to a breath test, and defendant asked what the procedure would be if he did not. The officer then reread defendant's rights. After the defendant stated he would rather not take the breath test, the officer took defendant to a magistrate's home, where the magistrate signed a court order to withdraw blood from defendant. The blood alcohol test was performed at 3:52 A.M. at a local hospital and defendant was then lodged at the county jail. The defendant's blood test ultimately revealed a blood alcohol measurement of 0.20 percent.

The City of Wyoming Police Department has a policy which dictates that if the drinking-driving suspect refuses to take a breath test, the officer

attempts to get a warrant to draw a blood sample from the suspect. However, defendants are not told of this policy when they are read their rights, and defendant was not told of this policy in the instant case. Defendant claimed in the trial court that he should have been informed of the police department's policy before being required to state whether he would submit to a breath test. At the district court hearing on the suppression motion, defendant testified that, after he was told that a warrant would be obtained for his blood, he volunteered three or four times to take the breath test, but that the police officer would not allow it. The police officer testified that, although he did not recall defendant's change of mind, he does not allow a defendant to consent to a breath test after the defendant has been informed that the police would seek a warrant, since, by then, the defendant has "already refused."

The district court found that authority cited by defendant in his suppression motion was inapplicable to the instant case. The district judge found that the fact that defendant was told that if he refused a breath test a chemical test would not be given to him without a court order was sufficient to comply with the statute. However, the circuit court reversed and found that a defendant has a right to know that the department's actual policy is to attempt to obtain a court order for a blood test before the defendant decides whether or not to voluntarily submit to the breath test. The circuit judge also found that, if a defendant is informed of the department's policy, the defendant may more readily submit to a breath test and avoid the automatic suspension of driving privileges for refusal of the breath test.

We are confronted here with the narrow question of whether a court-ordered chemical test ad-

ministered to an accused drinking driver must be suppressed because the arresting officer failed to inform the accused that if he refused to voluntarily submit to a breath test a court order *would* be obtained to compel a blood alcohol test and instead told the accused that, per the statute, a court order *could* be obtained to compel the blood test. MCL 257.625a; MSA 9.2325(1), as most recently amended,[1] states in pertinent part:

(1) The amount of alcohol or presence of a controlled substance or both in the driver's blood at the time alleged as shown by chemical analysis of the person's blood, urine or breath shall be admissible into evidence . . . .

\* \* \*

(5) The tests shall be administered at the request of a peace officer having reasonable grounds to believe the person has committed a crime described in subsection (1) . . . .

\* \* \*

(6) *The person charged shall be advised that if the person refuses the request of a peace officer to take a test described in this section, a test shall not be given without a court order.* The person charged shall also be advised that the person's refusal of the request of a peace officer to take a test described in this section shall result in the suspension of his or her operator's or chauffeur's license or operating privilege, and in the addition of 6 points to his or her driver record. [Emphasis added.]

In *People v Castle,* 108 Mich App 353; 310 NW2d 379 (1981), the case relied upon by defendant and by the circuit court in reversing the decision of the district court, the defendant was arrested for DUIL and asked to take a breath test.

---

[1] 1982 PA 310, § 1, effective March 30, 1983.

The defendant refused because he wanted to consult his attorney first. When the defendant's attorney arrived seventy minutes later and promptly requested that his client be given a breath test, the police refused, citing a standard departmental policy not to give the test if it was requested more than one hour after an initial refusal. The police also refused the attorney's request that he be permitted to have a blood test performed on the defendant.

This Court, relying upon the then applicable version of MCL 257.625a; MSA 9.2325(1), affirmed the circuit court's dismissal of the charges, saying:

> We are guided by these statutory requirements to hold that any person charged with DUIL must be informed of police regulations and rules, if any, that materially affect him to insure that the accused has an opportunity to make an informed decision. This is particularly so when one considers the impact of the choice and the fact that the person arrested does not have the assistance of counsel in deciding whether to submit to a test. [*Castle, supra*, p 357.]

In the instant case, the circuit court accepted the defendant's analogy to *Castle* and held that the failure of the police officer to advise the defendant of the department's policy of seeking a warrant for a blood alcohol test if the accused refuses to take a breath test must result in suppression of test results taken pursuant to the warrant. However, we find that defendant's analogy to *Castle* fails on several grounds.

First, *Castle* involves an interpretation of a statute which has undergone considerable amendment since the date of that decision. The statute then in effect provided that a person who operates a motor vehicle "is deemed to have given consent to chemi-

cal tests." However, it also provided that "no test shall be given" to a person who refused to consent. *Castle, supra,* p 356. As in the current statute, the penalty for refusal was suspension or revocation of the accused's driver's license. In other words, the accused could either submit to a chemical test that might incriminate him or refuse to take the test and face loss of driving privileges. The choice, described as an "agonizing" one by the *Castle* Court, was nonetheless the accused's choice to make and this Court felt that it was necessary for a suspect to be fully advised on all material departmental rules and regulations which might bear on his decision to submit to a chemical test.

The current law is undeniably tougher on the accused. Now, if the accused refuses to submit to the chemical test of the officer's choice after the officer has advised him that a court order may be obtained to compel a test, he still faces loss of driving privileges and, depending on the local department's policy, if a court ordered chemical test is obtained, may also be incriminated by the test results.[2] Defendant argues that under the current law the *Castle* holding is more relevant than ever because a defendant now must make a tactical choice not on whether to take a chemical test but as to the form in which the defendant will disclose his blood alcohol level. In order to make a fully informed choice, defendant asserts, the accused must be told of the department's policy as to whether it would obtain a court order to test him.[3]

Truly, defendant faces a Hobson's choice, which is probably made even more difficult under the

---

[2] We express no opinion on the prosecution's assertion that under the current statute the police would have a right to obtain a search warrant for the accused's blood even if the accused consents to the breath test.

[3] Subject of course to the magistrate's grant of the court order.

new statute. However, we believe that this is precisely what the Legislature had in mind when it amended the law. To argue, as defendant does, that the law somehow is designed to permit the accused to choose the least inculpatory (reliable) chemical test is to distort the Legislature's purpose. The addition of the provision in the 1982 amendments that if a person refused to take a test, "a test shall not be given without a court order" does indicate a desire by the Legislature to guarantee some protection of the accused from overreaching behavior by the police. However, it also indicates a clear legislative pronouncement as to the limits of a police officer's responsibility on the advice to be given to a suspect arrested for driving under the influence.

Indeed, the language of the statute suggests a legislative refusal to codify *Castle.* Instead, the Legislature, by its words, drew a line regarding the advice that is required to be given by the authorities to the accused. It is an established principle of statutory construction that the express mention in a statute of one thing implies the exclusion of other similar things *(expressio unius est exclusio alterius).* See, for example, *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971). Thus, in view of the substantial amendments to the law since *Castle,* we decline to attach the significance to that decision which the defendant and the circuit court did.

Moreover, *Castle* involved a situation where, as a result of the failure of the police to give the breath test, no chemical evidence of any kind was available. The police also refused the defendant's request for a blood test. The failure in *Castle* to give the defendant any chemical test may have deprived him of a valid defense that could have exculpated him. Cf., *People v Underwood,* 153

Mich App 598; 396 NW2d 443 (1986). In the instant case, chemical evidence does exist. To suppress such evidence based on *Castle* would be to hold that the remedy for failure to inform the accused of every departmental policy concerning such chemical tests is the exclusion of that evidence.

In this case defendant did not allege, nor do we find, a violation of any constitutional right. Any alleged violation in this case was strictly statutory. Recently, in a similar situation where the Michigan Supreme Court was asked to apply the interim bail provisions of the release of misdemeanor prisoners act, 1961 PA 44, MCL 780.581 *et seq.;* MSA 28.872(1) *et seq.,* to statutorily circumscribe an otherwise constitutionally permissible warrantless search, the Court concluded that, where the legislative policy underlying the statute is not undermined by the search, the statute may not be judicially extended to suppress the fruits of the search. See *People v Chapman,* 425 Mich 245, 259-260; 387 NW2d 835 (1986). As the Supreme Court explained in *Collins v Secretary of State,* 384 Mich 656, 668; 187 NW2d 423 (1971), the immediate purpose of the "implied consent law" which we are considering is to obtain the best evidence of blood alcohol content at the time of the accused's arrest, and the long range purpose of the law is to prevent intoxicated persons from driving on the highways. Here, admission of the blood alcohol test is not in conflict with the legislative purpose that is embodied in this statute, and, accordingly, the statute should not be judicially extended, as defendant seeks and the circuit court held, to exclude the results of the properly obtained chemical test.

Only one other case has been published that construes *Castle, supra.* In *Harbison v Secretary of State,* 147 Mich App 63; 383 NW2d 123 (1985), lv

gtd 425 Mich 851 (1986), as in *Castle*, the police department had a policy of not administering a breath test if it was not requested within one hour of an initial refusal, and the defendant was not informed of this policy. This Court held that, even though Harbison thought that once he refused to take the test he could not change his mind, the police were under the obligation to tell him of the policy.

However, *Harbison* is distinguishable from the case at bar because that case involved the question of whether the defendant's license could be suspended administratively for refusal to submit to a chemical test, not whether relevant evidence in the drunk driving case should be suppressed. If the instant case were an administrative proceeding like *Harbison*, different considerations might prevail.[4] But, faced with the narrow question that is presented here, we hold that it is sufficient under the statute that the accused be told that, if he refuses to voluntarily submit to a breath test, a court order could be obtained to compel the blood test.[5] The decision of the circuit court to suppress the results of the blood alcohol test is clearly erroneous. The decision is reversed and the deci-

[4] However, we express no opinion on this question since it is not before us.

[5] As to the prosecution's argument and the circuit court's statement that to inform the defendant that a court order *would* be obtained if he refused to voluntarily submit to a breath test would result in obtaining consent by coercion (citing *Bumper v North Carolina*, 391 US 543; 88 S Ct 1788; 20 L Ed 2d 797 [1968]), we disagree. Cases decided after *Bumper* have held that consent given after a defendant is told a search warrant would be sought is good consent. See *United States v Boukater*, 409 F2d 537 (CA 5, 1969); *United States v Lace*, 669 F2d 46, 51-53 (CA 2, 1982). Moreover, given the choice available to defendants under the law, informing the accused that the officer *will* seek a court order will likely result in more breath tests being consented to and eliminate the need for officers to pursue the court order in the middle of the night while the accused's blood alcohol level dissipates.

sion of the district court is reinstated. The case is remanded to the district court for further proceedings.

Reversed and remanded.