# CHARLES N. ROBERTO

*vs.*

# AMEDEO CATINO ET AL., ADMINISTRATORS.

*Execution Sale—Notice—Inadequacy of Price—Laches.*

That a notice of an execution sale of Baltimore City property was not posted on the property will not support a suit, brought twelve years later, to set aside the sale, it having been advertised in the *Daily Record,* and a notice posted on the court house door.                                                    p. 41

The testimony of the execution defendant as to the value of the property, which was contradicted by the only other witness as to value, *held* insufficient to show that the price obtained was grossly inadequate.                                                 p. 42

The execution defendant not having questioned the sale until more than twelve years after it was made, although fully informed in regard thereto, the execution plaintiff, who purchased at the sale, his attorney, and the auctioneers, having all in the meanwhile died, and the property having largely increased in value, *held* that the execution defendant was barred by laches from attacking the sale.                              pp. 42-44

The existence of laches depends on the concurrence of a legal duty to do some act, and a failure to do that act for a time great enough to cause prejudice to an adverse party, prejudice being, generally speaking, anything which places the person affected in a more unfavorable or disadvantageous position than he would otherwise have occupied.                                    p. 43

*Decided January 11th, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Charles N. Roberto against Amedeo Catino and Vincent L. Palmisano, administrators of Salvatore Papio,

deceased. From a decree for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*J. Wallace Bryan,* with whom was *James Steele* on the brief, for the appellant.

*Wm. Curran* and *F. Stanley Porter,* with whom were *Mulliken & Porter* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Charles N. Roberto, in 1907, was in the saloon business in Baltimore, and he also acted as an agent for the sale of steamship tickets, and at the same time carried on in a small way a private banking business. At that time he had in his possession a considerable sum of money belonging to a number of persons, who entrusted it to him to keep for them or to transmit to their relatives in Italy. During the latter part of that year he claimed to have been robbed of nine thousand dollars by three persons who came into his place of business and took the money from his safe. Shortly after that his depositors began to withdraw the money they had left with him, until in January, 1908, he had paid out all the money he possessed, which was not sufficient to pay the demands of his creditors, and he then left Baltimore. He first went to Fairmount, West Virginia, to collect a debt due him by a resident of that town, and from there went to Denver, Colorado. During his absence, indictments were found against him in the Criminal Court of Baltimore City, and in January, 1909, he was arrested in Denver on these indictments and brought back to Baltimore.

When he left Baltimore he owned two houses on President Street and one on Albemarle Street in that city, all of which were subject to ground rents, and several weeks before he went away he placed a mortgage for two thousand dollars on

the President Street houses. Shortly after he left Baltimore Mariagrazia Liguillace procured an attachment on original process as against an absconding debtor on a claim of two hundred and twenty dollars to be issued against him out of the Superior Court of Baltimore City. This attachment, which was laid on the three houses referred to, in due course ripened into a final judgment, and on March 26th, 1908, execution issued on that judgment. On the 18th of April, 1908, the judgment was entered to the use of Salvatore Papio, and two days later the property attached was sold under the execution by the Sheriff at the Court House door in Baltimore City to Papio for three hundred and thirty-five dollars, and later conveyed to him. Nothing further was done until December 10th, 1920, when the bill of complaint in this case was filed in Circuit Court No. 2 of Baltimore City, for the purpose of having the sale of the property to Papio annulled upon the payment of the judgment, interest, and costs, and to obtain other relief incidental to that purpose. The gist of the complainant's contention is set out in his bill in the following language:

> "That by reason of fraud, misrepresentations and collusion practiced upon the said Sheriff, he was induced to seize and sell property of this complainant valued at more than $8,000 in satisfaction of a judgment of only $220, and to so conduct the sale thereof that there was no competitive bidding at said sale, whereby said judgment creditor was enabled to purchase all of the aforementioned property at the face value of his judgment and costs, notwithstanding the excessive levy made in violation of statutes of Maryland in such cases made and provided, thereby unjustly converting to his own use the plaintiff's entire equity in said property."

After testimony had been taken and the case argued, a decree was passed dismissing the bill, and from that decree this appeal was taken.

There is nothing in the testimony to support the charge that "by reason of fraud, misrepresentations and collusion practiced upon the Sheriff" he was "induced" to sell property "valued at more than $8,000" to satisfy a judgment of $220, and "to so conduct the sale" that there was no competitive bidding, other than a supposed inadequacy in the price obtained for the property at the Sheriff's sale.

The attachment proceedings are regular on their face, and it is not denied that Roberto owed the debt upon which they were based, nor that when the attachment issued he was absent from the State under circumstances which may well have justified a belief that he had absconded. The sale appears to have been advertised in the usual manner, and as far as the record discloses, to have been fairly conducted. There was some dispute as to whether the notice of sale was posted on the property, Mr. Heine, the deputy sheriff, who conducted the sale, testifying that he sent the notices to be posted on the property, and one other witness testifying that he saw the notice on at least one of the houses, while five witnesses living in the neighborhood testified that they passed the property at the time the property was advertised for sale, but saw no such notice, and Mrs. Roberto testified that none was posted on the property; but it was definitely shown that it was advertised in the *Daily Record* and that a notice of the sale was posted on the court house door in Baltimore City.

Nor, when the testimony is analyzed, does it support the averments of the bill of complaint and appellant's brief as to the inadequacy of the price obtained. William Merriken, a witness of thirty years' experience in Baltimore City as a real estate broker, and the only witness as to values other than the appellant himself, who was familiar with the property in question and had as agent bought other property in the immediate neighborhood, valued the appellant's leasehold interest in the three houses, in 1909, at $3,132, against which there was an outstanding mortgage of $2,000, and this valuation, while somewhat higher, was in substantial accord with

the valuation placed on the property by the city for the purpose of taxation at that time. It is true the appellant himself testified the property cost him about nine thousand dollars, including improvements and repairs, but that testimony was not conclusive, nor did it establish the fair market value of the property, but at most was only a circumstance to be considered in arriving at its fair market value.

Considering that the burden was upon the complainant to establish the allegations of the bill of complaint, we are unable to say that his testimony alone was sufficient to overcome the definite valuation placed on the property by Mr. Merriken, and if that valuation is accepted, we could not say that under the circumstances the price obtained was so grossly inadequate as to amount in itself to evidence of fraud. But even if we could assume that the property was sold for a grossly inadequate price, it is too late now to raise that objection. At the time the property was sold, Roberto was in Denver, but he was informed of the sale by his wife, who was in Baltimore a short time after it was made, and he himself returned within a year after it took place, but neither then nor afterwards, until he filed this bill, did he object to or question the regularity of the sale. It is true he said he employed several attorneys to assert his rights in the property and that it was due to their procrastination or inattention that nothing was done, but if that were true, the answer to it would be that as they were his agents, if they failed to act in accordance with his wishes he should have dismissed them. In the meantime, Edward I. Clarke, Papio's attorney, died, Papio died, and the members of the firm of auctioneers who sold the property died, and during the entire period of more than twelve years, which elapsed between the sale and this suit, neither by word or act did Roberto intimate to Papio that he intended to question Papio's right to the property, although he knew Papio claimed it as his own and dealt with it as such.

Under such circumstances, in our opinion, the defense of laches may properly be invoked, and the maxim *vigilantibus non dormientibus jura subveniunt* applied. What was said by this Court, through Judge Briscoe, in *Ripple* v. *Kuehne,* 100 Md. 676, is equally applicable to this case. There it was said: "The bill was not filed until more than eight years after the alleged fraud was committed and almost a year after the death of the party charged with the fraud, and the attorney who transacted the business. This Court has repeatedly held there must be 'conscience, good faith and reasonable diligence to call into action the powers of a court of equity.' In *Hammond* v. *Hopkins,* 143 U. S. 224, it is said, in all cases where actual fraud is not made out, but the imputation rests upon conjecture, where the seal of death has closed the lips of those whose character is involved, and lapse of time has impaired the recollection of transactions and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence. And those who have slept upon their rights must be remitted to the repose from which they should not have been aroused." Nor are the cases cited by the appellant at all in conflict with the view which we have expressed. The rule laid down in those cases is stated in *Demuth* v. *Old Town Bank,* 85 Md. 315, in the following language: "Strictly speaking, and using the term as it is understood in the law, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." * * * "Obviously, then, there must be a legal duty to do some act, a failure to do that duty and attendant circumstances which cause *prejudice* to an adverse party before the doctrine can be successfully invoked." That is, the existence of laches is made to depend upon the concurrence of these essential elements: a legal duty to do some act and a failure to do that act for a time great enough under the circumstances to cause prejudice to an adverse party. Just what amounts to preju-

dice, as that word is used in this connection, naturally depends upon the facts of the particular case, but, generally speaking, it may be said to be anything which places the person affected in a more unfavorable or disadvantageous position than he would otherwise have occupied.

In this case, during the appellant's long acquiescence in the sale of his property, it largely increased in value and the two persons who were likely to have known most about the sale have died, and it was only after their lips had been forever sealed that he charged the purchaser with fraud. If he had intended making such a charge, or attacking the sale, it was his duty to have exercised reasonable diligence in doing so while the person charged with the fraud and the witnesses conversant with the facts could have answered it. That duty the appellant failed to perform, and we cannot say that his failure to do so was without prejudice to the appellees. *Hammond* v. *Hopkins,* 143 U. S. 224-5; *Stieff Co.* v. *Ullrich,* 110 Md. 633; *Preston* v. *Horwitz,* 85 Md. 171. And since he acquiesced when he should have objected he cannot now be permitted to object when he should acquiesce. As a result of this conclusion it becomes unnecessary to notice in greater detail the other questions raised by the appellant. From what has been said, it follows that the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*