597 A.2d 939

## MOTOR VEHICLE ADMINISTRATION

v.

## Bruce Clayton SHRADER.

## MOTOR VEHICLE ADMINISTRATION

v.

## Sharon Lee KELLER.

## Jeffrey Paul LARKIN

v.

## MOTOR VEHICLE ADMINISTRATION.

**Nos. 4, 5 and 49 Sept. Term, 1991.**

Court of Appeals of Maryland.

Oct. 31, 1991.

**456**

Edward R.K. Hargadon, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., on brief, Glen Burnie, for Motor Vehicle Admin.

No brief filed for Shrader.

Corrie S. Galvin, Cohen, Snyder, McClellan, Eisenberg & Katzenberg, P.A., on brief, Baltimore, for Keller.

Karl H. Gordon, Robert A. Ades & Associates, on brief, Landover, for Larkin.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

These three cases require our construction of Maryland Code (1987, 1991 Cum.Supp.), § 16–205.1 of the Transportation Article, which under certain circumstances authorizes

the suspension of driving privileges when a licensee is detained on suspicion of drunken driving. Specifically, we are called upon to determine whether dismissal of an order of suspension is a proper sanction when the Motor Vehicle Administration (MVA)[1] fails to comply with the provisions of § 16–205.1(f)(5)(i) by scheduling a hearing to challenge the suspension more than 30 days after its receipt of a hearing request submitted by the licensee.

## I.

On June 17, 1990 at 3:07 a.m., Appellant, Jeffrey Paul Larkin, was stopped by a Maryland State Trooper in Prince George's County for suspected drunken driving. Larkin was advised of his right under § 16–205.1 of the Transportation Article to take or refuse a chemical test to determine the concentration of alcohol in his blood, and of the consequences of his decision. After Larkin refused to submit to the test, the trooper confiscated Larkin's driver's license and issued him an officer's certification and order of suspension, which also served as a temporary driver's license, allowing Larkin to continue to drive for 45 days after its issuance, or until completion of an administrative hearing at which Larkin could demonstrate why his license should not be suspended.

Larkin timely completed a request for a hearing to challenge the suspension of his license and mailed it to the MVA. That request was received by the MVA on June 25, 1990. A hearing was scheduled before an administrative law judge of the OAH for July 27, 1990, 32 days after MVA's receipt of Larkin's hearing request. Larkin's temporary license was scheduled to expire August 1, 1990, five days after his administrative hearing was held.

---

1. At the time that these cases arose, scheduling of hearings was a function of the MVA. That responsibility has since been transferred to the Office of Administrative Hearings (OAH), created by Ch. 788 of the Acts of 1989, codified as Md.Code (1984, 1991 Cum.Supp.), §§ 9–1601 to –1610 of the State Government Article. This fact does not affect the disposition of these cases.

On July 27, 1990, Larkin appeared for his administrative hearing and filed a motion to dismiss the suspension order on the basis of MVA's failure to schedule a hearing date within 30 days from the date Larkin filed his hearing request, as required by § 16–205.1(f)(5)(i) of the Transportation Article. The administrative law judge denied Larkin's motion and suspended his license to drive for 120 days.

Larkin filed an appeal to the Circuit Court for Prince George's County and the suspension was stayed pending the outcome of the appeal. The circuit court judge affirmed both the denial of the motion to dismiss and the decision of the administrative law judge to suspend Larkin's license.

The case involving Appellee, Bruce Clayton Shrader, followed a similar course. On the night of April 20, 1990 at 10:44 p.m., Shrader was detained by a police officer for suspected drunken driving in Harford County. Shrader was advised of his rights with regard to taking a chemical test and refused to submit to the test. As a result, the trooper seized Shrader's driver's license and served him an order of suspension and a temporary license authorizing him to drive for 45 days after its issuance, or until completion of an administrative hearing to determine whether the suspension was warranted.

Shrader filed a timely request for an administrative hearing which was received by MVA on April 24, 1990. The MVA scheduled the hearing regarding Shrader's refusal to take the test on May 25, 1990, 31 days after MVA had received the request for hearing. At the administrative hearing, Shrader moved to dismiss the order of suspension on the basis that the hearing was not held within 30 days of the date that the request was received, as provided in § 16–205.1(f)(5)(i). The motion was denied by the administrative law judge, who stated that unless Shrader could show any harm, the untimely scheduling of the hearing did not require a dismissal. At the conclusion of the hearing, Shrader's license was suspended for 120 days.

Shrader filed a timely appeal to the Circuit Court for Harford County and the suspension was stayed pending the outcome of the appeal. On appeal, the circuit court ruled that the requirement that a hearing be scheduled within 30 days of receipt of the request was mandatory, and that although Shrader was not prejudiced, MVA's non-compliance nevertheless required reversal of the suspension.

Similarly, late in the evening of April 20, 1990 and the early morning of April 21, 1990, Appellee, Sharon Lee Keller, was detained by a police officer for suspected drunken driving in Anne Arundel County. Keller was advised of her right to take or refuse a chemical test, and the attendant administrative consequences. She declined to take such a test, and as a result, her driver's license was confiscated and she was presented an order of suspension and a temporary license, which authorized her to drive for 45 days or until completion of an administrative hearing to determine the validity of the suspension.

Keller timely requested an administrative hearing which was received by the MVA on April 23, 1990. Her hearing was scheduled for May 25, 1990, 32 days after MVA had received the request for hearing. At the administrative hearing, Keller moved to dismiss the suspension on the ground that the hearing had not been scheduled within the requisite 30 days, as provided in § 16–205.1(f)(5)(i). The motion was denied by the administrative law judge, and Keller's license was suspended for 120 days.

On appeal to the Circuit Court for Anne Arundel County, the court ruled that the requirement that a hearing be scheduled within 30 days of the receipt of the request was mandatory and that MVA's non-compliance required a dismissal of the suspension, even though Keller had not been prejudiced by the delay.

We granted certiorari to review the judgments of the circuit courts in these cases to determine whether dismissal is the proper sanction for the MVA's failure to provide a hearing to challenge the order of suspension within 30 days.

## II.

In 1988, the General Assembly established a Task Force on Drunk and Drugged Driving because "[t]he problem of drunk and drugged driving is of continuing concern to the citizens of the State of Maryland." Joint Resolution No. 15 of the Acts of 1988. The Task Force was charged, *inter alia,* with:

"(1) Examining methods of increasing the effectiveness of the remedies currently available for combatting drunk and drugged driving;

"(2) Examining remedies developed by other states and jurisdictions to deal with the problem of drunk and drugged drivers; [and]

"(3) Recommending changes and additions to current laws and regulations dealing with drunk and drugged drivers."

*Id.*

In its interim report issued in December of 1988, the Task Force recommended that the General Assembly enact what it referred to as an administrative per se law which would provide "for the prompt suspension of the driver's license of an individual who, upon being detained by a police officer on suspicion of driving or attempting to drive while under the influence of alcohol or while intoxicated, either: 1) Refused to take a BAC [blood alcohol concentration] test; or 2) Submitted to the BAC test, and the results exceeded a statutorily defined limit." Task Force on Drunk and Drugged Driving, Interim Report to the General Assembly, at 6 (1988). The General Assembly responded during its next session by amending § 16–205.1 of the Transportation Article, which generally provided that a person who drives on Maryland highways is deemed to have consented to take a chemical test to determine the alcohol content of his or her blood if detained on suspicion of driving while under the influence of alcohol. Ch. 284 of the Acts of 1989. Under that amendment to § 16–205.1, when an individual is detained for suspected drunken driving, the detaining police

officer is required to advise the person of the administrative sanctions that shall be imposed for refusal to take the test or for test results indicating a blood alcohol concentration of 0.10 or more. § 16–205.1(b)(2)(iii). If the driver refuses to take the test, the police officer shall confiscate the person's Maryland driver's license, personally serve an order of suspension on the person, and issue a temporary license to drive. § 16–205.1(b)(3). The temporary license which the detaining police officer is required to issue to the driver expires on the 46th day after the driver was detained. *Id.* This section, until amended during the 1990 session of the General Assembly, permitted the driver who refused the test to request an administrative hearing to challenge the suspension by filing a request with the MVA within 10 days after he or she was detained by the police officer.[2] Failure to request a hearing within 10 days from detention precludes the driver from having an administrative hearing,[3] and allows MVA to issue an order suspending the driver's license for 120 days for a first offense. § 16–205.-1(b)(1)(i)2.A.

---

**2.** The issues raised in such a hearing are limited to the following: (1) whether the police officer had reasonable grounds to believe that the person was driving or attempting to drive while intoxicated, under the influence of drugs or alcohol, or in violation of an alcohol restriction; (2) whether there was evidence of drug or alcohol consumption; (3) whether the police officer requested a test after the person was fully advised of the potential administrative sanctions that could be imposed; (4) whether the person refused to take the test; (5) whether the person drove or attempted to drive while having an alcohol concentration of 0.10 or more; and, (6) if the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle. § 16–205.1(f)(7)(i).

**3.** This section was amended during the 1990 session to permit the driver 30 days from the date of detention to request a hearing. § 16–205.1(f)(6)(i)1. However, under the amended section, unless the driver requests the hearing within 10 days from the date of detention, the 45 day period during which the driver is authorized to drive will not be extended. § 16–205.1(f)(6)(ii). The 10 day requirement for requesting a hearing does not require the request to have reached the MVA by the 10th day from the date of detention, as long as the request is postmarked on or before the tenth day. § 16–205.1(f)(2).

Section 16–205.1(f)(5)(i) of the Transportation Article provides that:

> "If the person requests a hearing at the time of or within 10 days after the issuance of the order of suspension ... the Administration shall set a hearing for a date within 30 days of the receipt of the request."

The licensees in the instant cases filed a hearing request within 10 days of the issuance of the order of suspension and were provided a hearing 31 or 32 days after the MVA received the requests, rather than within 30 days. The MVA admits that although it formerly made, and OAH now makes, every effort to comply with the mandatory duty to schedule a hearing within 30 days, occasionally, due to a backlog in scheduling or administrative oversight, the 30 day requirement cannot be met.

### III.

While a statute or rule may dictate a mandatory duty on the part of any agency or party, non-compliance with that statute or rule does not necessarily require a dismissal of the case. *In re Keith W.*, 310 Md. 99, 104, 527 A.2d 35, 37 (1987). Thus, we must examine the provisions of § 16–205.1 which are silent as to any sanctions to be imposed for non-compliance with the 30 day scheduling requirement, to determine whether dismissal of the order of suspension is a proper sanction when the MVA fails to schedule a hearing date within 30 days of its receipt of a hearing request.

The cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471, 474 (1988). Because the language of the statute is the primary source of legislative intent, *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976), the words of the statute must be given their ordinary and natural meaning. *NCR Corp. v. Comptroller*, 313 Md. 118, 124, 544 A.2d 764, 767 (1988).

On the other hand, the plain meaning rule is not rigid and does not force us to read legislative provisions in rote fashion and in isolation, *Kaczorowski v. City of Baltimore*, 309 Md. 505, 514, 525 A.2d 628, 632 (1987). One equally well-settled principle of statutory interpretation is that a statute is to be construed reasonably with reference to the purpose, aim or policy of the legislature reflected in that statute. *Id.* at 513, 525 A.2d at 632. Additionally, a statute must be construed in context; "[t]he 'meaning of the plainest language' is controlled by the context in which it appears." *Id.* at 514, 525 A.2d at 632 (quoting *Guardian Life Ins. v. Ins. Comm'r*, 293 Md. 629, 642, 446 A.2d 1140, 1147 (1982)); *NCR Corp.*, 313 Md. at 125, 544 A.2d at 767. Thus, when construing a provision that is part of a single statutory scheme, the legislative intent must be gleaned from the entire statute, rather than from only one part. *Jones*, 311 Md. at 405, 535 A.2d at 474. Also, legislative reports and other pertinent legislative history may help to provide the appropriate context. *Kaczorowski*, 309 Md. at 515, 525 A.2d at 632–33.

In any event, "results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning." *Potter v. Bethesda Fire Dep't*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987) (quoting *Fabritz*, 276 Md. at 422, 348 A.2d at 279).

Furthermore, when determining whether a case should be dismissed for non-compliance with a statute or rule, we have established a number of factors to be included in the analysis. First and foremost, the purpose and policy of the statute or rule must be considered in determining the appropriate sanction. *Gaetano v. Calvert County*, 310 Md. 121, 125–26, 527 A.2d 46, 48 (1987); *State v. Werkheiser*, 299 Md. 529, 533, 474 A.2d 898, 900 (1984); *Maryland St. Bar Ass'n v. Frank*, 272 Md. 528, 533, 325 A.2d 718, 721 (1974).

We have consistently recognized that the statutory provisions enacted to enforce the State's fight against drunken driving, namely Md.Code (1989, 1991 Cum.Supp.), § 10–302 to –309 of the Courts and Judicial Proceedings Article and § 16–205.1 of the Transportation Article, were enacted for the protection of the public and not primarily for the protection of the accused. *State v. Moon,* 291 Md. 463, 477, 436 A.2d 420, 427 (1981); *Werkheiser,* 299 Md. at 536–37, 474 A.2d at 902. The General Assembly's goal in enacting the drunk driving laws, as stated by Judge Cole in *Willis v. State,* 302 Md. 363, 488 A.2d 171 (1985), is "to meet the considerable challenge created by this problem by enacting a series of measures to rid our highways of the drunk driver menace. These measures, some of which are decades old, are primarily designed to enhance the ability of prosecutors to deal effectively with the drunk driver problem." *Id.* at 369–70, 488 A.2d at 175.

In 1989, the General Assembly enacted the administrative per se law recommended by the Task Force, rewriting § 16–205.1 of the Transportation Article to allow a person's driver's license to be promptly suspended for suspected drunken driving if the person refused a test for blood alcohol concentration. Ch. 284 of the Acts of 1989. The legislative history of Chapter 284 (House Bill 556) indicates that the General Assembly's desire for swift and certain action against drunk drivers was balanced with concern for the administrative needs of the MVA. While House Bill 556 was under consideration, Delegate David B. Shapiro requested advice on the validity of the summary suspension provisions of the bill from the Attorney General's Office of Counsel to the General Assembly. In response, Assistant Attorney General Kathryn M. Rowe wrote:

"You have ... asked whether any provision is made for a stay of suspension if the hearing cannot be held within 45 days.... [N]o stay of suspension is provided if the hearing cannot be held within 45 days because the licensee is unable to attend. A stay is available, however, if the Administration is unable to provide a hearing within

45 days.... The administration 'shall' set the hearing for a date within 30 days of the receipt of the request, but if a hearing cannot be provided within 30 days, the suspension is stayed until a hearing is provided."

Letter from Assistant Attorney General Kathryn M. Rowe to Delegate David B. Shapiro (Feb. 10, 1989), on file with the Department of Legislative Reference, Annapolis, Legislative History file of House Bill 556. This letter strongly indicates that the General Assembly contemplated the possibility that the MVA would not be able to schedule a hearing within 30 days, but only meant to provide a remedy (a stay of suspension) where prejudice would arise to the licensee.

On behalf of the Mayor of Baltimore's Task Force for Liaison with the General Assembly, Colonel Joseph Cooke of the Baltimore City Police Department wrote to the House Judiciary Committee to express Baltimore City's support for House Bill 556. Cooke indicated that:

"Previous legislative efforts in this area have raised questions regarding the administration of our on the site confiscation program. Our department has contacted ... the Nevada Highway Patrol regarding their license confiscation programs, similar to the one proposed in House Bill 556.... Nevada officials indicated that their seven day temporary license is too short and has caused administrative problems for them. They indicated that the proposed 45 day validity period is more appropriate to meet the administrative needs of the Motor Vehicle Administration."

Letter from Colonel Joseph Cooke to the House Judiciary Committee (Feb. 15, 1989), on file with the Department of Legislative Reference, Annapolis, Legislative History file of House Bill 556. Thus, the 45 day period was contemplated as part of an overall administrative plan. This conclusion is logical when viewed in the context of the entire scheme of § 16–205.1(f).

The General Assembly, in determining the appropriate period for driving on the temporary license, recognized that not all hearing requests would be received by the 10th day,

but rather that many of the requests would be mailed on the 10th day. As a result, the General Assembly calculated an additional five days for the request to be carried by the postal authorities to the MVA. Obviously, the General Assembly was expecting that it might take as many as 15 days from the date of detention for the driver's request for a hearing to be received by the MVA. The General Assembly then expected the MVA to schedule an administrative hearing for the driver in the 30 days that followed MVA's receipt of the request for a hearing. The General Assembly was aware that, unless the driver had his or her hearing within the 45 days that followed his or her detention, the licensee's privilege to drive would be automatically suspended on the 46th day without due process of law.

This intent is explicit in the 1990 amendment to § 16–205.1, which was enacted by Ch. 413 of the Acts of 1990, for the purpose of "defining certain terms; making stylistic changes; clarifying language; making technical corrections; and generally relating to the revision of laws pertaining to certain alcohol- or drug-related driving offenses," and states:

> "If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.10 or more at the time of testing, the police officer shall ... [i]nform the person that ... the hearing will be scheduled within 45 days ..."

Md.Code (1987, 1991 Cum.Supp.), § 16–205.1(b)(3)(v)1. of the Transportation Article. Clearly, then the General Assembly intended that the hearing would be held within 45 days from the driver's detention. Larkin, Shrader, and Keller's administrative hearings were held 40 to 41 days after their detentions, a time well within the 45 day period for holding a hearing.

■ In this context, it is inappropriate to invoke a dismissal sanction because a hearing was held 31 or 32 days, instead of 30 days, after receipt of the licensee's request for a hearing. The reason for the prompt hearing is not for the benefit of the licensee; rather, the expedited hearing is

required to promptly remove the driver from the highway. Dismissing the suspension because of either a backlog in the scheduling of administrative hearings or an administrative oversight, in no way enhances the protection of the public. In fact, dismissing a suspension under these circumstances would be inimical to the interests of the public and would enhance the interests of the presumptively drunken driver, an outcome that is contrary to our holdings and to the General Assembly's expressed sentiments.

## IV.

We have previously held that dismissal is not the required sanction if a statute or rule does not state that dismissal will result from non-compliance; the statute or rule must be reviewed to determine whether a sanction for non-compliance is specified. *Gaetano,* 310 Md. at 125, 527 A.2d at 48; *Werkheiser,* 299 Md. at 537, 474 A.2d at 902; *Resetar v. State Bd. of Education,* 284 Md. 537, 548, 399 A.2d 225, 231 (1979); *Maryland St. Bar Ass'n v. Frank,* 272 Md. at 533, 325 A.2d at 721; *Director v. Cash,* 269 Md. 331, 345, 305 A.2d 833, 841 (1973), *cert. denied,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974).

The MVA argues that § 16–205.1(f)(5)(iii)2. provides a penalty for violation of the mandatory time requirements in the instant case. That section of the Transportation Article provides in pertinent part:

"A postponement of a hearing described under this paragraph shall extend the period for which the person is authorized to drive if:

1. Both the person and the Administration agree to the postponement;

2. The Administration cannot provide a hearing within the period required under this paragraph; or ..."

Thus, the MVA asserts that failure to provide a hearing within 30 days from receipt of the request for hearing is sanctioned by extending the period for which the person is authorized to drive.

Counsel for the licensees in the instant case suggest that this section is inapplicable for two reasons: (1) because it requires that MVA and the licensee agree to any postponement, and (2) because this section pertains only to "postponements" and there was no previously scheduled administrative hearing in this case. We find both of these arguments unpersuasive and inconsistent with the legislative history of this section.

■ First, legislative history indicates that subsections 1. and 2. should be read disjunctively, not conjunctively; when the MVA cannot provide a hearing within the prescribed period, it may postpone the hearing despite the licensee's objection. The Floor Report on House Bill 556 by the Senate Judicial Proceedings Committee indicates that "[any] postponement of the hearing does not extend the period for which the person may drive under the 45–day temporary license unless (1) the MVA cannot provide a hearing within the prescribed period, or (2) the MVA and the person both agree to the postponement." [4] Senate Judicial Proceedings Committee, Floor Report on House Bill 556 to the General Assembly of 1989, at 1–2 (emphasis added). *See also* Senate Judicial Proceedings Committee, Bill Analysis on House Bill 556 to the General Assembly of 1989, at 1. Thus, the fact that a licensee did not agree that the delay was acceptable to him or her does not prevent the MVA obtaining a postponement when it cannot provide a hearing within the prescribed period.

Moreover, in this case, the term "postponement" should not be read narrowly. A postponement means to "put off; defer; delay ... as when a hearing is *postponed*." Black's Law Dictionary 1168 (6th ed. 1990) (emphasis in original). Indeed, in the context of § 16–205.1(f)(5)(iii)2., the term cannot be premised on a previously scheduled hearing date. The very need for the postponement arises because the

---

**4.** Later amendments require a stay under an additional circumstance, when certain problems arise dealing with issuance or compliance with a subpoena to appear at the hearing. § 16–205.1(f)(5)(iii)3.

MVA could not provide the initial hearing date within the 30 day period required under § 16–205.1(f)(5)(i).

It would be ludicrous for us to read § 16–205.1(f)(5)(iii)2. as requiring the MVA to go through the charade of scheduling the hearing for a date within the 30 day period—which it knows cannot be met—and then rescheduling the hearing for a date beyond the 30 day period. Such a reading would exalt form over substance.[5] Rather, § 16–205.1(f)(5)(iii)2. reasonably means that if a hearing cannot be scheduled within the 30 day period, and if, for that reason, the hearing is delayed or deferred beyond the period required under § 16–205.1(f)(5)(i), the MVA shall extend the period during which the person is authorized to drive until the hearing is held, by staying the suspension which would otherwise become effective on the 46th day after the issuance of the order of suspension.

## V.

■ Finally, the sanction to be imposed for non-compliance in a specific case may depend upon whether the party seeking dismissal can demonstrate prejudice from the non-compliance. *Gaetano*, 310 Md. at 127, 527 A.2d at 49; *Resetar*, 284 Md. at 550, 399 A.2d at 232.

In *Resetar*, the appellant was terminated by the Montgomery County Board of Education. He argued that the case should have been dismissed because the Board did not render its decision within 30 days of receiving the hearing examiner's findings, as was required by the Board's own rule. As one of its reasons not to dismiss the case, we stated:

---

**5.** The MVA's administrative rule picks up on this and rather than put the licensee through a two step process, accomplishes the same thing in one step. On October 1, 1990, the MVA promulgated a regulation codifying its policy that a dismissal was not required unless the MVA was responsible for a lapse in the licensing period prior to a hearing and prejudice to the licensee ensued. Md.Regs.Code Tit. 11, § 11.03.-08(A) (1991). This reading avoids a subterfuge and is consistent with legislative intent.

"The County Board's regulation provides no penalty and makes no provision in the event of a violation of the limit imposed. Resetar has suffered no prejudice. He received pay which he might not otherwise have received. The delay was brief. We are of the view that neither the delay nor the temporary reinstatement had the effect of stripping the County Board of authority to dismiss Resetar. The purpose of the provision no doubt was, as said by the Court in *McCall's Ferry* [*Power Co. v. Price*, 108 Md. 96, 69 A. 832 (1908)], 'to have prompt decisions of causes.'"

*Id.* at 550, 399 A.2d at 232.

Likewise, in the cases at bar, the delay in scheduling the administrative hearing beyond the 30 days had no prejudicial impact on the licensees. Our predecessors observed that:

"Just what amounts to prejudice ... naturally depends upon the facts of the particular case, but, generally speaking, it may be said to be anything which places the person affected in a more unfavorable or disadvantageous position than he would otherwise have occupied."

*Roberto v. Catino*, 140 Md. 38, 43–44, 116 A. 873, 875 (1922). These licensees were not placed in a more unfavorable or disadvantageous position; instead, they benefitted in that they were permitted to drive for a period of time that they might not otherwise have been allowed.

For these reasons, the administrative law judges who heard the instant cases properly ruled that dismissal of the suspension was not the appropriate sanction for the MVA's non-compliance with § 16–205.1(f)(5)(i) of the Transportation Article.

JUDGMENT OF THE CIRCUIT COURT OF PRINCE GEORGE'S COUNTY IN No. 49 AFFIRMED; COSTS TO BE PAID BY APPELLANT.

JUDGMENTS OF THE CIRCUIT COURTS FOR ANNE ARUNDEL COUNTY IN No. 5 AND HARFORD COUNTY IN No. 4 REVERSED; CASES REMANDED TO THOSE COURTS WITH INSTRUCTIONS TO AFFIRM THE JUDGMENTS OF THE OFFICE OF ADMINISTRATIVE HEARINGS; COSTS IN THIS COURT AND IN THE CIRCUIT COURTS FOR ANNE ARUNDEL COUNTY AND HARFORD COUNTY TO BE PAID BY APPELLEES.

ROBERT M. BELL, Judge, dissenting.

I respectfully dissent. Contrary to the majority's view, I believe that dismissal is the proper sanction for violation of that provision of Maryland Transportation Code Ann. § 16–205.1 (1987, 1991 Cum.Supp.), which requires the Motor Vehicle Administration (MVA) to schedule an administrative hearing to challenge a suspension order within thirty days of its receipt of a request for hearing. Certainly, the sanction is not "postponement" of the administrative hearing, pursuant to § 16–205.1(f)(5)(iii) [1], and, whenever necessary, extending the temporary driver's license issued to a

---

**1.** That section provides:
A postponement of a hearing described under this paragraph shall extend the period for which the person is authorized to drive if:
    1. Both the person and the Administration agree to the postponement;
    2. The Administration cannot provide a hearing within the period required under this paragraph; or
    3. Under circumstances in which the person made a request, within 10 days of the date that the order of suspension was served under this section, for the issuance of a subpoena under § 12–108 of this article except as time limits are changed by this paragraph:
    A. The subpoena was not issued by the Administration;
    B. An adverse witness for whom the subpoena was requested, and on whom the subpoena was served not less than 5 days before the hearing described under this paragraph, fails to comply with the subpoena at an initial or subsequent hearing described under this paragraph held within the 45–day period; or
    C. A witness for whom the subpoena was requested fails to comply with the subpoena, for good cause shown, at an initial or subsequent hearing described under this paragraph held within the 45–day period after the issuance of the order of suspension.

driver detained for suspicion of drunk driving,[2] as success-fully argued by MVA.

I agree with much of the majority's analysis. It is correct that § 16–205.1(f)(5)(i) [3] imposes a mandatory sched-uling duty on MVA, but is silent as to the sanction for non-compliance. I do not challenge the majority's description of the statutory scheme—the Legislature prescribed a maxi-mum period of 45 days, the life of the temporary license, to accommodate the request (including delivery time) for, scheduling of, and conduct of an administrative hearing at which a driver may challenge the order of suspension issued to him. *See* § 16–205.1(b)(3)(v)1. Nor do I quarrel with the majority's statement of the statute's purpose; I concede that it was enacted primarily for protection of the public, rather than the driver.

---

**2.** Section 16–205.1(f)(5)(v) addresses the situation when the postpone-ment results in a deferral of the hearing beyond the 45th day and, so, it contemplates that MVA will "issue a temporary license." As we shall see, however, the majority endorses a definition of postpone-ment, espoused by MVA, which allows the hearing date to be set, initially, beyond the life of the temporary license. Consistent with that definition, MVA promulgated an administrative regulation appar-ently giving themselves authority to extend the temporary license:
"A. Scheduling.
(1) A hearing shall be provided by the Administration within the time periods required in Transportation Article, § 16–205.1, Anno-tated Code of Maryland.
(2) If the Administration cannot provide a hearing within the time periods required by Transportation Article, § 16–205.1 and the suspension period has not begun by the time the hearing is provided, or the Administration stays the suspension under Regu-lation .04A(2), the Administration or Administrative Law Judge may not dismiss the case.
(3) If the Administration cannot provide a hearing within the time periods required by Transportation Article, § 16–205.1, and the suspension period has begun as a result of the Administra-tion's delay or oversight, the case shall be dismissed."
COMAR 11.11.03.08A.

**3.** That section, in pertinent part, provides: "If the person requests a hearing at the time of or within 10 days after the issuance of the order of suspension ... the Administration shall set a hearing for a date within 30 days of the receipt of the request."

The majority and I also agree upon the appropriate sanction for violation of the statutory scheme: dismissal. The difference between us is the timing of, and trigger for, that sanction. The majority, as does MVA, acknowledges that if a driver is deprived of the privilege to drive for even one day prior to a timely requested hearing, he or she will have been prejudiced, without due process, and, thus, entitled to have the order of suspension dismissed. But they both also assert that it is § 16–205.1(f)(5)(iii)2 [4] that provides the sanction for violation of the scheduling provision.

There is no doubt but that, so long as the request is postmarked ten days or less after issuance of the order of suspension,[5] MVA is *required* to set a hearing within thirty days of receipt. § 16–205.1(f)(5)(i). Compare § 16–205.-1(f)(b)(ii). Relying on the life of the temporary license issued pursuant to § 16–205.1(b)(3) and legislative history,[6] specifically letters from Assistant Attorney General Katherine M. Rowe and Colonel Joseph Cooke of the Baltimore City Police Department concerning, respectively, the validity of the summary suspension provisions and Nevada's experience with similar legislation,[7] the majority concludes that "the 45 day period was contemplated as part of an overall administrative plan," at 465, and that "[c]learly, ... the General Assembly intended that the hearing be held within 45 days from the driver's suspension." At 466.

---

**4.** See note 1.

**5.** The 1990 amendment to the statute extending the time for the request for administrative hearing to thirty days does not apply to the cases *sub judice.*

**6.** The legislative history utilized by the majority is, in my opinion, inappropriate for the purpose for which it is offered. There is no dispute concerning the meaning of § 16–205.1(f)(5)(i) nor, for that matter, § 16–205.1(f)(5)(iii)2. It is disputed, however, that the latter provision provides a sanction for violation of the scheduling provision. The legislative history to which the majority refers does not bear on that question.

**7.** The Cooke letter simply recognizes that a 45 day temporary license is administratively more palatable than one for seven days.

MVA concedes, and the majority agrees, that if the hearing is initially scheduled more than 45 days after detention and the temporary license is not extended, then dismissal is *the* proper sanction. Because, however, the purpose of the legislation is primarily to benefit the public, rather than the driver and, in this case, the violations caused only a one or two day delay in scheduling and holding the hearings, which, nevertheless, were held within 45 days, they say that the *mere* violation of the mandatory scheduling provision does not require the dismissal sanction.

Construing the statutory scheme as contemplating that hearings would be scheduled within 45 days of the issuance of the order of suspension, as opposed to within 30 days of receipt of a request for hearing, does not promote expeditious hearings and, moreover, is productive of potentially illogical results. MVA need not comply with the 30 day scheduling requirement in the case of drivers whose requests for hearings are received less than 15 days from detention; it could schedule those hearing after 30 days, but still within 45 days. On the other hand, timely requests received on the 15th day would have to be honored within 30 days, or be dismissed; failure to schedule within 30 days would mean that the temporary license would have expired. In the former case, a violation would result in no sanction; in the latter, a violation of the same length would require dismissal. It is not at all clear that the Legislature intended that MVA set a hearing at any time within the 45 day period rather than within the 30 day mandatory scheduling period, whatever the timing of its receipt of the request for hearing.

Issuance of a 45 day temporary license ensures, whether the request for a hearing is made on the first day, or on the tenth day, allowing for necessary postal delivery, that MVA will have 30 days in which to schedule the hearing. The majority does not dispute that this is so, but says that the administrative scheme does not permit dismissal where there is non-compliance so long as the hearing is scheduled within the life of the temporary license, within 45 days.

Consequently, as the majority sees it, when a hearing is requested is irrelevant as long as the hearing is held, or even scheduled, in 45 days, and *MVA* determines that it cannot *hold* it within 30 days of the request. Had the Legislature intended that hearings be scheduled within 45 days, rather than 30, it could easily have said so. Certainly, it would have taken very little effort to add a few extra words, such as, "or in any event within the 45 day period." In any event, that the Legislature contemplated holding a requested hearing in the ordinary course, sometime within a 45 day period, depending upon when the request is received, does not mean that it also intended MVA to disregard the legislatively prescribed, clear and unambiguous mandatory 30 day scheduling provision.

Given the legislation's purpose, it is unlikely that the Legislature intended that the entire 45 day life of a temporary license, or even most of it, would be used, as a matter of course, in every, or virtually every, case. To the contrary, I suspect that it intended that, only in the unusual case, where the request is received after the 10th day, thus requiring scheduling of the hearing toward the end of the 45 day period, would it be necessary that most, or all, of the life of the temporary license be utilized; only a request made on the 10th day, and received by MVA on the 15th day, could consume the entire 45 day life of the temporary license. It is safe to assume, I believe, that the Legislature's preference would be to have the hearing scheduled, and held, and, possibly, the driver removed from the road, all prior to expiration of the temporary license. Thus, consistent with the legislation's primary purpose to protect the public, expedition in scheduling and in holding a hearing is to be encouraged.

MVA argues that § 16–205.1(f)(iii)2 is the sanction for failing to schedule a hearing within 30 days. That section provides that if the case is postponed because MVA cannot provide the hearing, the period during which the detained person is authorized to drive is extended. MVA then stays the suspension and issues a temporary license. § 16–205.

1(f)(5)(v). *See also* COMAR 11.11.03.08A. Critical to this argument is defining "postponement" so as to permit MVA initially to schedule the hearing more than 30 days after receipt of the hearing request. The argument is simply wrong.

Interpreting "postponement", as used in § 16–205.-1(f)(5)(iii), as broadly as the majority does gives it a strained meaning, one not consistent with its ordinary and common signification. *See State v. Bricker*, 321 Md. 86, 92, 581 A.2d 9, 12 (1990); *Harford County v. The University*, 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *NCR Corp. v. Comptroller*, 313 Md. 118, 124–125, 544 A.2d 764, 767, 767 (1988); *Jones v. State*, 304 Md. 216, 220, 498 A.2d 622, 624 (1985); *Mayor & City Council of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984); *Schweitzer v. Brewer*, 280 Md. 430, 438, 374 A.2d 347, 352 (1977). The term "postponement" involves more than a mental exercise; at the very least it implies that there has been a previously scheduled date from which the present one is being put off, deferred or delayed. See Black's Law Dictionary 1168 (6th Ed.1990). This is supported by § 16–205.1(f)(5)(iii)1 and 3: as a matter of initial scheduling, it could hardly be expected that subparagraph 1 could occur—without being apprised of an initial date, one can hardly be expected to agree to change it—nor, without a date set for which subpoenas have been issued, could the circumstances of subparagraph 3 be expected to have occurred.

There is another reason that I do not believe the Legislature intended that MVA's unilateral failure promptly to schedule the hearing within the mandated period be included in the term "postponement." When a hearing has been scheduled within the prescribed period, it may be postponed, of course, but only by the administrative law judge assigned to conduct it. Unilateral action by MVA is inconsistent with the administrative law judge's role in the process.[8]

---

8.  Maryland Transportation Code Ann. § 12–104(e)(1) authorizes MVA to "delegate to the Office of Administrative Hearings the power and

By adopting MVA's argument, the majority endorses an interpretation of the statutory scheme that is inimicable to the public interest and the statutory purpose. Under it, MVA, on its own and without any possibility of appellate review of the decision, may *schedule* the hearing, in total disregard of the legislatively mandated scheduling requirement, and hold it well beyond the 45 day period; all it need do is assert that it cannot provide the hearing within the time required. In fact, this argument allows MVA to determine unilaterally that it is unable to hold the hearing, in the time prescribed, in advance of its being scheduled and give itself a "postponement." Moreover, having given itself a "postponement," MVA is permitted to issue a temporary license which will be valid until it finds it convenient to hold the hearing. And because only MVA decides whether it can provide the hearing and can extend the period during which a driver may continue to drive, the statutory interpretation espoused by the majority encourages the extension of the driving privilege of those detained for drunk driving. While in this case, the delay was one or two days beyond the 30th day and within the 45 day period, it is fortuitous that it was so short; it could be much longer. The long and short of it is, therefore, that, solely on MVA's unreviewed, and unreviewable, assertion that it cannot provide a hearing in a timely fashion, a drunk driver may be permitted to drive indefinitely. Certainly, the Legislature did not intend that.

By enacting 16–205.1(f)(5)(iii), the Legislature simply recognized that, once a hearing has been set timely, MVA, may not be able to provide it on the date set; [9] thus, it allowed

---

authority under the Maryland Vehicle Law to conduct hearings under this article...." An administrative law judge is in the Office of Administrative Hearings. It is undisputed that that office was conducting the hearings at all times relevant to the case *sub judice*. *See also* COMAR 11.11.03.02A(1) and COMAR 11.11.03.08A.

9. It is difficult, at best, to determine in advance of a case being called, whether MVA will be able to provide a hearing in that case. That more cases are set than MVA is used to trying on any given day does

for postponement, consistent with due process. It is an amazing leap from this to the use of that provision as an initial scheduling tool and an even bigger one to the proposition that MVA and MVA alone, determines whether, and when, it can provide the required administrative hearing or that the statutory scheme "sanctions" the disregard of the mandatory scheduling provision with impunity.[10]

Requiring MVA to extend the right to drive of a driver presumed to be a drunk driver is not an appropriate sanction for a violation of the scheduling provision. It does not encourage MVA to act more expeditiously. It does punish the public by permitting that driver to drive for a longer period. And what's worse, the period can be extended indefinitely, in MVA's sole, unreviewable discretion. There is no guidance given by the statute as to what constitutes a sufficient basis for the conclusion that MVA cannot provide a hearing. It must be recalled that it is MVA that determines its own inability *and* extends the driving privilege. As the majority interprets the statutory scheme, what it characterizes as a sanction gives MVA the unfettered right to extend indefinitely the driving privileges of a driver awaiting a suspension hearing; indeed, MVA, and MVA alone, determines both when the hearing will be initially scheduled *and* whether there can ever be a sanction.

MVA has successfully argued that it would be ludicrous to go through a subterfuge, *i.e.*, set a hearing that it knows

---

not mean that all may not be accommodated or that the particular one at issue will not be reached. Indeed, it is conceivable that, when faced with the immediacy of the hearing, the party requesting it may opt not to insist that it be held. In any event, it is necessary, in my view, that there be some ability to review MVA's contention that it was unable to hold the hearing.

10. The scheduling provision is clear and unambiguous and mandatory; nevertheless, the majority interprets the legislative scheme so as to render that mandatory, clear and unambiguous provision nugatory. In so doing, it violates an important canon of statutory construction. *See Newman v. Subsequent Injury Fund,* 311 Md. 721, 723, 537 A.2d 274, 275 (1988); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 511, 525 A.2d 628, 631 (1987); *Management Personnel Services, Inc. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984).

will have to be postponed. That argument is based upon a faulty premise. It assumes that MVA's determination that the hearing could not be held within the prescribed period is objectively accurate, when, in fact, we just don't know that that is so. But even if it were a subterfuge and that it is ludicrous, it is not for MVA or, for that matter, this Court to countermand the Legislature, which must be presumed to have understood what it was doing, and to have meant to do it. The Legislature, in mandatory terms, required that an administrative hearing be set within 30 days of a hearing request and, further, that a postponement, in its commonly understood sense, coupled with an extension of the temporary license, if necessary, must be obtained in the event the hearing cannot be held. Its mandate is clear. There is no need or justification for ignoring it.[11]

Although I start from the same premise, I emphasize the need for compliance with the mandatory scheduling provision, rather than that provision that permits extension of the temporary license. The latter is, to my mind, important only when it is objectively demonstrable that MVA cannot provide a hearing within the time prescribed. Focusing on the scheduling requirement and sanctioning its violation by dismissing the suspension order has the virtue of requiring MVA to comply with the legislatively mandated scheduling provision, rather than encouraging its disregard, of emphasizing promptness, rather than delay, and of furthering the public interest. The majority's argument that, so long as a hearing is held within 45 days, the maximum life of the temporary license, or such period thereafter during which a driver's privilege to drive is extended by MVA gives MVA unreviewable discretion to allow a driver to continue to drive until MVA decides that it is time to hold a hearing. This is in derogation of the Legislature's concern with

---

11. The fact that the MVA promulgated an administrative rule which codifies its interpretation of the appropriate sanction does not bind this Court. *See* Maryland Regs.Code Title 11, § 11.03.08(A) (1991). In fact, I believe that, because it seeks to, and does, change the legislative intent as expressed, it is invalid.

limiting the period during which that driver is permitted to drive.

Nor am I persuaded by the majority's argument that, to justify dismissal, a driver must show prejudice. Again, the primary beneficiary of the statutory scheme is the public, not the drivers. Looking "to the purpose of the rule or statute in either of the circumstances of its violation to determine the appropriate sanction for violation of its provisions," *Gaetano v. Calvert County,* 310 Md. 121, 126, 527 A.2d 46, 48 (1987), makes clear that the critical consideration is not prejudice, but whether the sanction furthers the legislation's purpose. Viewed from the correct perspective, *i.e.,* "the consequences of the non-compliance in light of the totality of the circumstances," *Gaetano,* 310 Md. at 127, 527 A.2d at 48, I believe the answer is obvious. Unless the sanction for failure to set an administrative hearing within the *mandatory* time period prescribed by § 16–205.1(f)(5)(i) is dismissal, MVA will have no incentive to comply with the legislative mandate; it will continue to ignore the scheduling provision and, when necessary, to extend the life of the temporary license.[12] The dismissal sanction ensures not only expeditious scheduling of a hearing, but also that MVA will apply the statute so that hearings will be held in the shortest possible time.

Judges ELDRIDGE and CHASANOW have authorized me to state that they join in the views expressed herein.

---

**12.** There is Maryland case law supporting the proposition that dismissal is the appropriate sanction for non-compliance with a mandatory time requirement in a statute. *See In re James S.,* 286 Md. 702, 410 A.2d 586 (1980), *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979) and *U.S. Coin Etc. v. Director of Finance,* 279 Md. 185, 367 A.2d 1243 (1977). *Hicks* makes the point quite clearly that the sanction of dismissal is designed to ensure compliance with an unambiguously mandatory time requirement. 285 Md. at 316–18, 403 A.2d at 359–60.