Durham District Court
No. 85-447
Laconia District Court
No. 85-549

THE STATE OF NEW HAMPSHIRE

v.

DAVID G. JENKINS

THE STATE OF NEW HAMPSHIRE

v.

RICHARD A. DICKSON, JR.

October 3, 1986

*Stephen E. Merrill*, attorney general (*Robert B. Muh*, assistant attorney general, on the brief, and *Bradford W. Kuster*, assistant attorney general, orally), for the State.

*Tybursky & Watson*, of Portsmouth (*Stephen J. Tybursky* on the brief and orally), for the defendants.

BROCK, J. These two cases, consolidated on appeal, present the question whether principles of due process or equal protection

require that an individual arrested for driving while intoxicated, RSA 265:82 (Supp. 1985), be advised, prior to submitting to a chemical test for intoxication, that the results of the test may result in a charge for the more serious offense of aggravated driving while intoxicated, RSA 265:82-a (Supp. 1985). We hold that neither the due process nor the equal protection clause of either the State or Federal Constitutions requires that individuals be apprised of the possibility that by submitting to a chemical test for intoxication they may be charged with an enhanced offense.

These cases are before us on similar facts. Both defendants were initially arrested for driving while intoxicated. While in police custody, each defendant was given a form to read entitled "Implied Consent Rights." While not identical, these forms contained essentially the same information. Each form apprised the suspect that he had been arrested for driving under the influence and explained that he was being asked to submit to a test to determine the alcohol content in his blood. It further informed the suspect of his right to have a similar test taken by a person of his choosing at his own expense. Each form then explained that refusal to submit to the test resulted in a revocation of the suspect's driver's license for a period of ninety days or one year, depending upon the suspect's previous record for driving while intoxicated.

Each defendant signed the implied consent document and submitted to an Intoximeter 3000 test. The tests indicated that there was more than 20/100 percent alcohol by weight in the blood of each defendant. As a result of these tests, each defendant was charged with the more serious offense of aggravated driving while intoxicated, RSA 265:82-a, III (Supp. 1985). A conviction for aggravated DWI is a *misdemeanor* punishable by a fine of not more than $1000 and not less than $350, and license revocation for one year. RSA 265:82-b, II (Supp. 1985). Driving while intoxicated is a *violation* punishable by a fine of not more than $1000 and license revocation for at least ninety days, RSA 265:82-b, I(a) (Supp. 1985). Neither defendant was informed that by taking the test he ran the risk of being charged with the enhanced offense.

The defendant Jenkins timely moved to suppress the results of the Intoximeter 3000 test. The Durham District Court (*Shaheen*, J.) granted the defendant's subsequent motion for interlocutory transfer without ruling pursuant to Supreme Court Rule 9. The defendant Dickson moved to dismiss the charges or, in the alternative, to suppress the results of the breathalyzer analysis. The Laconia District Court (*Huot*, J.) denied Dickson's motion to suppress and his subsequent request for an interlocutory transfer without ruling. Later, the same court granted an interlocutory appeal from its order pur-

suant to Supreme Court Rule 8. The following questions were transferred in each case:

"A. Does the mandate of the due process clause of both the federal and state constitutions require the state to inform citizens that submitting to a test measuring alcohol content may result in a harsher penalty than exercising the right to refuse to submit to a test?

B. Does the mandate of the equal protection clause of both the federal and state constitutions require the state to inform citizens that submitting to a test measuring alcohol may result in a harsher penalty than exercising the right to refuse to submit to a test?

C. Should the results of the breathalyzer test be excluded for failure of the State to inform the defendant that submitting to the test could result in a harsher penalty than exercising the right to refuse to submit to a test?"

We note at the outset that the State has fully complied with the *statutory* directives that apply in this case. RSA 265:87 conditions the admissibility of chemical test results upon the State's compliance with three requirements relating to the consequences of *refusal*. The forms furnished to the defendants met these requirements. No statute requires that a warning be given as to the potential consequences of *submitting* to the test. We now turn to the defendants' constitutional arguments. We first consider the defendants' claims under the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983); *see also Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). The defendants contend that their decisions to submit to the tests were not made knowingly and intelligently, and that hence the evidence against them was gained in violation of their due process rights. *See* N.H. CONST. pt. I, art. 15. We disagree.

The cases involved in this appeal can be analogized to cases in which we have held that defendants need not be advised of *all* of the consequences which may result from the entry of a guilty plea. *See State v. Levey*, 122 N.H. 375, 445 A.2d 1089 (1982); *State v. Fournier*, 118 N.H. 230, 385 A.2d 223 (1978). In *Fournier*, we found prior court records pertaining to the defendant's habitual offender status admissible even though they did not reveal whether the defendant was notified prior to each sentencing that she could be found to be an habitual offender after three convictions for motor vehicle violations. *Id.* at 231, 385 A.2d at 224. We held that "a defendant need

only be advised of the direct consequences of his guilty plea and not the consequences which are collateral." *Id.*

The defendant in *Levey* argued that at the time of her first offense for DWI, her guilty plea and waiver of counsel were not knowingly and intelligently made because of her lack of knowledge at the time that she would face a mandatory jail sentence for a subsequent offense. *Id.* at 377, 445 A.2d at 1090. We held that there was no requirement that the defendant be informed that her conviction could be used toward the imposition of a mandatory jail sentence for a subsequent offense. *Id.* Likewise, DWI defendants are not entitled to be informed that they face the possibility of an enhanced charge if they take the chemical test.

■ Moreover, the results of the chemical test are no more than real evidence, and the taking of the test no more than voluntarily supplying that evidence. The act of taking the test is voluntary because the very act of driving on New Hampshire's public roads implies consent to take the test. RSA 265:84 (Supp. 1985) ("Any person who drives a vehicle upon the ways of the state shall be deemed to have given consent to a chemical . . . test . . . for the purpose of determining the alcoholic or controlled drug content of his blood . . . ."). It is virtually self-evident that one who volunteers self-incriminating evidence to the State has no right to expect the police to explain all the potential legal consequences of the evidence. *See South Dakota v. Neville,* 459 U.S. 553, 565 n.16 (1983).

■ Finally, it is a matter of common sense that the blood alcohol test is administered for the purpose of gathering evidence for prosecution. The defendants do not argue that it is unfair to use the test results at trial. Instead, they argue only that it is unfair for the police to withhold a warning that the law imposes a greater punishment for driving with blood alcohol levels above 20/100 percent than for levels above 10/100 percent. It is clear to us, however, that when the police stop drivers they suspect are intoxicated, they have no duty beyond that prescribed by RSA 265:87 to educate those drivers who are unaware of the law. Every citizen is generally presumed to know the law, else there would be no law. *State v. Carver,* 69 N.H. 216, 219, 39 A. 973, 975 (1897). Thus, the failure of the police to inform the defendants of the potentially greater punishment does not violate the defendants' rights under the due process clause of the New Hampshire Constitution.

■ The defendants further argue that the lack of any warning of the possibility of enhanced punishment creates the potential for a violation of their right to equal protection of the laws. *See* N.H.

CONST. pt. I, arts. 1, 12. We find this claim to be without merit. "The first inquiry concerning equal protection is whether persons similarly situated are being treated differently under the statutory law." *State v. Callaghan*, 125 N.H. 449, 451, 480 A.2d 209, 210 (1984) (quoting *Gazzola v. Clements*, 120 N.H. 25, 29, 411 A.2d 147, 151 (1980)). The State contends, and we agree, that the potentially disparate consequences that DWI defendants face in this situation are attributable to the individual *choices* made by each defendant, rather than to any discriminatory feature of the law as written or applied. Thus, the equal protection clause is not implicated under the facts of this case.

 Because federal law provides no greater protection to the defendants, no violation of their due process or equal protection rights under the United States Constitution has resulted. *See South Dakota v. Neville*, 459 U.S. 553, 565 n.16 (1983). Thus, we answer all three transferred questions in the negative. Further, we affirm the ruling of the Laconia District Court in *State v. Dickson*, and in *State v. Jenkins* we remand to the Durham District Court with instructions to deny the defendant Jenkins' motion to suppress.

*No. 85-447 remanded; No. 85-549 affirmed.*

All concurred.