UNDERWOOD v SECRETARY OF STATE

Docket No. 101131. Submitted August 15, 1989, at Detroit. Decided November 7, 1989.

Floyd M. Underwood was arrested for operating a motor vehicle while under the influence of intoxicating liquor. Underwood refused a breath test. The Secretary of State suspended Underwood's driver's license on the basis of the test refusal. Underwood petitioned the Macomb Circuit Court for review of the license suspension. The court, Michael D. Schwartz, J., vacated the order of suspension. Respondent, Secretary of State, appealed.

The Court of Appeals *held:*

A person charged with operating a motor vehicle while under the influence of intoxicating liquor, in addition to being advised of his chemical-test rights, must be informed of police regulations and rules that materially affect him to insure that the person has an opportunity to make an informed decision on whether to submit to a blood-alcohol test. Here, the trial court correctly concluded that the police department's failure to inform petitioner of its policy not to administer a breath test more than one hour after an initial refusal deprived petitioner of the opportunity to refuse the test while fully informed.

Affirmed.

1. AUTOMOBILES — INTOXICATING LIQUORS — BLOOD-ALCOHOL TEST — IMPLIED CONSENT — STATUTES.

A person who operates a motor vehicle on a public highway and is arrested for operating the vehicle while under the influence of intoxicating liquor is considered to have consented to chemical tests for determining the amount of alcohol in his blood; the Secretary of State may suspend, revoke or deny issuance of a driver's license for a person who refuses to take such a test (MCL 257.625c[1], 257.625f; MSA 9.2325[3][1], 9.2325[6]).

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic § 126.

Suspension or revocation of driver's license for refusal to take sobriety test. 88 ALR2d 1064.

2. AUTOMOBILES — INTOXICATING LIQUORS — BLOOD-ALCOHOL TEST —
    POLICE RULES AND REGULATIONS.

    A person charged with operating a motor vehicle while under the
    influence of intoxicating liquor, in addition to being advised of
    his chemical-test rights, must be informed of police regulations
    and rules that materially affect him, e.g., a rule that provides
    no breath test will be given more than one hour after such test
    is initially refused by the person, to insure that the person has
    an opportunity to make an informed decision on whether to
    submit to a blood-alcohol test.

*Edward A. Servitto, Jr.,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Deborah Anne Devine,* Assistant Attorney General, for respondent.

Before: MACKENZIE, P.J., and MARILYN KELLY and T. M. BURNS,* JJ.

PER CURIAM. On May 15, 1987, the circuit court vacated respondent Secretary of State's order suspending petitioner Floyd Underwood's driver's license. Respondent appeals as of right and contends that petitioner's refusal to take a breath test under MCL 257.625f; MSA 9.2325(6) was not reasonable in spite of his not being advised of the police department's policy to limit the time for refusal to one hour. We affirm.

At approximately 2:00 A.M. on October 24, 1986, Roseville Police Officer Albert DeSmet was dispatched to investigate a report that someone was tampering with vehicles in a restaurant parking lot. As Officer DeSmet pulled into the parking lot, petitioner's car sideswiped the patrol car. The officer arrested him for operating a motor vehicle while under the influence of intoxicating liquor, MCL 257.625(1); MSA 9.2325(1). After the accident,

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

petitioner said he did not need hospitalization, and he was taken to the police station. At approximately 2:20 A.M., Officer DeSmet read petitioner his rights pursuant to *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), as well as his chemical test rights. Petitioner refused to consent to the breath test, saying that he wanted to make a telephone call. Between 2:20 A.M. and 3:20 A.M., police asked petitioner at least four times if he would consent to a breath test and advised him what would happen if he refused. During that period, he made several phone calls and contacted his attorney. Petitioner told police that he would not take the chemical test until after he spoke with his attorney. No one advised him of the department's policy limiting the time for refusal to one hour. At 3:20 A.M., petitioner was told that he had been given ample time for someone to come down, and he was locked up. At 3:40 A.M., Edward Servitto, petitioner's attorney, arrived, and they were allowed to talk in the presence of three officers. Servitto was told that it was too late for petitioner to take a breath test, and he did not request that petitioner be given one. According to Servitto, had he not been told that it was too late for a breath test, he would have advised petitioner to take the test. Petitioner was then asked if he wanted to go to the hospital to be checked for injuries and was told that he could take a blood-alcohol test there. Neither petitioner nor his attorney responded.

Respondent contends that the circuit court erred in applying the holding in *People v Castle,* 108 Mich App 353; 310 NW2d 379 (1981), to vacate its order of suspension. According to respondent, our Supreme Court's summary reversal of *Harbison v Sec of State,* 147 Mich App 63; 383 NW2d 123

(1985), rev'd 428 Mich 872; 437 NW2d 255 (1987), requires us to reverse the circuit court's order.

A person who operates a motor vehicle on a public highway and is arrested for operating the vehicle while under the influence of intoxicating liquor is considered to have consented to chemical tests for determining the amount of alcohol in his blood. MCL 257.625c(1); MSA 9.2325(3)(1). The Secretary of State may suspend, revoke or deny issuance of the operator's license of a driver who refuses to take such a chemical test. MCL 257.625f; MSA 9.2325(6).

In *Castle, supra* at 355, the defendant was taken to the police station after his arrest for driving while under the influence of liquor and, at 8:10 P.M., was asked to take a Breathalyzer test after he was advised of his rights. The defendant refused to take the test, because he wished first to consult with his attorney. *Id.* When the defendant's attorney arrived at 9:20 P.M. and requested that his client be given a Breathalyzer test, the police refused because of the department's standard policy not to give a test requested more than one hour after the initial refusal. The police had not previously advised the defendant of the policy. *Id.* This Court concluded that a person's decision on whether to refuse a chemical test must be made with full knowledge of the rules in effect. *Id.* at 357. The Court held that the failure of the police to advise the defendant of the one hour time limit denied him the opportunity to make an informed decision about whether to submit to a chemical test. *Id.*

The defendant in *Harbison,* 147 Mich App 65, thought that, once he refused to take the breath test, he could not change his mind. He did not attempt to consult with an attorney. 147 Mich App 66 (C. M. FORSTER, J., dissenting). The majority

ruled that the police were still obligated to inform him of departmental policies. 147 Mich App 65-66. In summarily reversing the Court of Appeals, our Supreme Court explained:

> Despite receiving the warnings required by MCL 257.625; MSA 9.2325, and ample opportunity to contact his attorney, the plaintiff steadfastly refused to take the breath test. In these circumstances, the existence of a departmental policy limiting the time for administering the breath test to one hour was irrelevant. As the hearing officer found:
> "In the instant case there was some kind of a one-hour policy but in this case the Petitioner never changes his mind regarding his refusal to take the test. Thus, any kind of one-hour policy in the Dearborn Heights Police Department did not ultimately materially affect him." [428 Mich 872.]

The Supreme Court's reversal in *Harbison,* was based on that petitioner's steadfast and unconditional refusal to take the breath test. Unlike in *Harbison,* the petitioner in this case made attempts to contact his attorney and was successful in doing so. The failure of the police to inform Harbison that he had an hour to change his mind about taking the test was irrelevant to his refusal. To the contrary, the failure of the police to advise the instant petitioner that his refusal to decide whether to take the test within the one hour time limit deprived him of the opportunity to refuse the test while fully informed. While the police could require petitioner to make his decision to take the test in the absence of counsel, their failure to advise him of the one hour time limit deprived him of an opportunity to do so.

Under these circumstances, the trial court's reliance on *Castle* was correct. The facts in *Harbison* are not controlling in this case.

Affirmed.