604 A.2d 919

**MOTOR VEHICLE ADMINISTRATION**

v.

**Stephen B. CHAMBERLAIN.**

**No. 48, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 14, 1992.

Eldridge, J., concurred in result only.

Edward R.K. Hargadon, Asst. Atty. Gen., argued and on brief (J. Joseph Curran, Jr., Atty. Gen. on brief), Glen Burnie, for petitioner.

James A. Bonifant, argued and on brief (Clarke, Crawford and Bonifant, on brief), Gaithersburg, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired) Specially Assigned.

ROBERT M. BELL, Judge.

The issues presented in this case involve determining what advice a police officer is required to give a driver detained on suspicion of driving while intoxicated or while under the influence of alcohol pursuant to Maryland Code, § 16–205.1(b) of the Transportation Article[1] and whether the remand hearing in this case was scheduled in compliance with § 16–205.1(f)(5)(vi). The Circuit Court for Montgomery County found that (1) Stephen B. Chamberlain ("Chamberlain") had been inadequately informed of the consequences of refusing to take a chemical test to determine alcohol concentration, *see* § 16–205.1(a)(iii), or of taking and failing that test, *i.e.* the test results reveal an alcohol concentration of 0.10 or more, and (2) the Motor Vehicle Administration ("MVA") failed expeditiously to schedule the probable cause hearing required by § 16–205.1(f)(5).[2] We granted the writ of certiorari at the request of the MVA to consider these matters of public importance. We shall reverse.

---

**1.** Unless otherwise indicated, all references are to Transportation Article, 1987 Replacement Volume, 1991 Cumulative Supplement. The 1991 amendments to § 16–205.1, *see* Acts 1991, Ch. 81, do not affect this case.

**2.** The court raised constitutional issues, *sua sponte,* and determined them in favor of Chamberlain. Specifically, it determined that precluding those drivers who refuse to take a chemical test from qualifying for a restrictive license, while permitting those who take it, but fail, to qualify was a violation of due process and of the Eighth Amendment proscription against cruel and unusual punishment.

## I.

Chamberlain was stopped by a police officer for speeding and on suspicion of driving while intoxicated. After conducting a roadside investigation, consisting of several field sobriety tests, the officer placed Chamberlain under arrest. He subsequently advised him in accordance with § 16–205.1(b),[3] reading verbatim from the DR–15, an advice of rights form:

You have the right to refuse to submit to the test. Your refusal shall result in an administrative suspension of your Maryland driver's license or your driving privilege if

Those issues were not presented by Chamberlain in his appeal memorandum as required by Maryland Rule B12.

In his brief, not only does Chamberlain refrain from making any constitutional arguments and affirmatively acknowledges that he abandons the Eighth Amendment argument, but he conceded at oral argument that he did not raise the constitutional issues in the first instance, the trial court having done so on its own, and, further, that his research did not support the court's determinations. Thus, we conclude that the appellee no longer wishes to pursue the constitutional issues. We will not, therefore, further consider them.

3. Section 16–205.1(b), in pertinent part, provides:

(b) *No compulsion to take chemical test; consequences of refusal.—*
(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.10 or more, the Administration shall:
(i) In the case of a person licensed under this title:
1. For a test result indicating an alcohol concentration of 0.10 or more at the time of testing:
   A. For a first offense, suspend the driver's license for 45 days; or
   B. For a second or subsequent offense, suspend the driver's license for 90 days; or
2. For a test refusal:
   A. For a first offense, suspend the driver's license for 120 days; or
   B. For a second or subsequent offense, suspend the driver's license for 1 year;

\*　　\*　　\*　　\*　　\*　　\*

(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated, while under the influ-

you are non-resident. Suspension by the Motor Vehicle Administration shall be 120 days for a first offense and one year for a second or subsequent offense.

If you submit to a test which indicates an alcohol concentration of 0.10 or more, it shall result in an administrative suspension of your Maryland driver's license or your driving privilege if you are non-resident. The suspension by the Motor Vehicle Administration shall be 45 days for a first offense and 90 days for a second or subsequent offense.

The officer did not tell Chamberlain that if he met certain conditions, even though he might fail the test, the suspension may nevertheless be modified or a restrictive license issued. *See* § 16–205.1(m).[4]

Chamberlain refused the test. His license was thereupon confiscated and he was issued a temporary 45–day license. Having been advised in accordance with § 16–205.1(b)(3)(v),

---

ence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:
(i) Detain the person;
(ii) Request that the person permit a test to be taken; and
(iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.10 or more at the time of testing.

4. Section 16–205.1(m) provides:
(m) *Modification of suspension.*—(1) The Administration may modify a suspension under this section or issue a restrictive license if:
(i) The licensee did not refuse to take a test;
(ii) The licensee has not had a license suspended under this section during the past 5 years;
(iii) The licensee has not been convicted under § 21–902 of this article during the past 5 years; and (iv) 1. The licensee is required to drive a motor vehicle in the course of employment;
2. The license is required for the purpose of attending an alcoholic prevention or treatment program; or

of the right to do so, he timely requested a hearing. For a discussion of the scheduling of the administrative hearings, *see Motor Vehicle Administration v. Shrader*, 324 Md. 454, 460–62, 597 A.2d 939, 942 (1991).

At the hearing, Chamberlain raised several issues, including the adequacy of the advice he was given concerning the consequences of refusing or failing the test. He also questioned whether the hearing had been scheduled timely. *See* § 16–205.1(f)(5)(i) and discussion *infra*. The Administrative Law Judge (ALJ) determined that Chamberlain refused the test after being "advised of the administrative penalties [sic] that shall be imposed upon refusal, or having an alcohol concentration of 0.10 or more." Consequently, he ordered Chamberlain's driver's license suspended for 120 days, specifically stating that § 16–405 [5] would have been considered, but that "it doesn't apply in this situation under the new law with refusal." Thus, Chamberlain's suspension was neither modified nor an employment restrictive license issued.

On appeal, Chamberlain argued that he was not adequately advised of the consequences of refusing or failing the test, and that the ALJ did not adequately "review and consider all evidence presented to make [that] determination...." When the record and transcript of the administrative hearing were forwarded to the circuit court, it was discovered that a segment of the hearing was not properly

---

3. It finds that the licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired.
(2) If the licensee refused to take a test, the Administration may not modify a suspension under this section or issue a restrictive license.

5. Section 16–405(a) provides:
(a) *Hearing officer authorized not to order suspension or revocation.*—Except as provided in § 16–205.1 of this title, if the suspension or revocation of a license would affect adversely the employment or opportunity for employment of a licensee, the hearing officer may:
(1) Decline to order the suspension or revocation; or
(2) Cancel or modify the suspension or revocation.

recorded. As a result, the case was remanded to the MVA for a new hearing.

The hearing on remand was held on November 1, 1990. At its conclusion, the ALJ entered essentially the same order: Chamberlain's license was suspended for 120 days for refusing to take the test, that suspension being without possibility of modification or issuance of a restrictive license. Again, Chamberlain appealed, this time raising only two issues: (1) whether the remand hearing was rescheduled expeditiously in accordance with § 16–205.1(f)(5)(vi) and (2) whether the police officer adequately advised him of the consequences of refusing to take the test or of failing it. The circuit court's Opinion and Order concluded, in pertinent part:

> The record establishes that the administrative hearing was not held expeditiously as required by Maryland Annotated Code, Transportation Article § 16–205.1(f)(v) (1990 Cum.Supp.) and that the delay amounted to a denial of due process as required by the United States and Maryland State Constitutions.
>
> The record further establishes that Appellant was not fully advised of all pertinent administrative procedure enacted in Maryland Annotated Code, Transportation Article, § 16–205.1 (1990 Cum.Supp.) since he was not informed by the arresting officer that he *might possibly* obtain a restricted license for work and alcohol education purposes if he agreed to take the breathalyzer and received results indicating an alcohol concentration of .10 or more ... which failure amounted to a denial of due process. (Emphasis added)

The ALJ's decision was reversed.

II.

Chamberlain correctly perceives the issue to be how much advice the Legislature intended the police to give a detained driver concerning the consequences of refusing or failing a chemical test for alcohol. And the canons of construction offered to assist in determining that intent are those we

have enunciated previously, and often. Thus, because the issue is the meaning of the word "sanctions", as used in §§ 16–205.1(b) and (f), *see infra*, he asserts that the court's task is one of statutory construction, the "ultimate aim [of which] is to effect the legislative intent." *Revis v. Maryland Automobile Insurance Fund*, 322 Md. 683, 686, 589 A.2d 483, 484 (1991).

Agreeing with the MVA that advising drivers of the different consequences applicable to failing the test and refusing to take it encourages drivers to take the test and, consequently, facilitates their prosecution, *see Shrader*, 324 Md. at 464, 597 A.2d at 944, Chamberlain focuses on the replacement of the word "penalties" in subsection (b)(2)(iii) of the prior law, with the word "sanctions", Acts 1989, Ch. 284, on the word "fully" in subsection (b)(3)(viii)3, *id.*, and on subsections (f)(7)(i)3, *id.*, and (f)(8)(i)3, which were added by Acts 1990, Chs. 11 and 413, and which track the language of subsection (b)(3)(viii)3. Chamberlain points out that the word "sanctions" is broader than the word "penalties", encompassing "that part of the law which is designed to secure enforcement by . . . offering a reward for its observance." Black's Law Dictionary 5th ed. p. 1203.[6] By its insertion of the word "fully" to describe the amount of advice the police must give a driver, subsection (b)(3)(viii)3, and by using identical language in subsections (f)(7)(i)3, describing the issues to be considered at the hearing, and (f)(8)(i)3, pertaining to the findings necessary to sustain a suspension, Chamberlain asserts, the Legislature intended that more advice be given a detained driver under the present statute than under the former. He infers from these provisions that, in addition to the length of the

---

6. In its entirety, Black's Law Dictionary defines "sanctions" as: "That part of a law which is designed to secure enforcement by imposing a penalty for its violation or offering a reward for its observance." This is to be contrasted with the definition of penalty: "An elastic term with many different shades of meaning, it involves the idea of punishment, corporal or pecuniary, civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary 5th ed. p. 1020.

suspension, the detained driver must be told of at least one other reward or incentive which flows from failing the test, but not from refusing it, *i.e.*, that a driver who fails the test may be eligible to have his suspension modified or for a restrictive license.

The MVA, of course, takes the opposite position: the police need only advise the driver in accordance with subsection (b)(2)(iii); it is enough that he or she be told of the disparity in the length of the suspension for refusing to take the test and for failing the test. Moreover, the MVA maintains that these are the only "administrative sanctions that shall be imposed." It reasons, in order that § 16–205.1(m) apply, not only must the driver request a hearing and meet all of the prerequisites there set out, but, even then, whether to modify the suspension or issue a restrictive license is still within the discretion of the ALJ. Possible eligibility for a restrictive license or modification of the suspension is not, it argues, a "sanction".[7] In any event, neither modification of the suspension nor issuance of a restrictive license is possible until the mandatory suspension triggered by failing the test has been imposed.

### III.

In *Dickerson v. State,* 324 Md. 163, 170–72, 596 A.2d 648, 651–52 (1991), we reiterated the role of statutory construction in the determination of legislative intent:

---

**7.** In 1983, the Attorney General of Maryland addressed a question involving the sufficiency of the advice form used by police officers to inform drivers about the consequences of refusing a chemical test for alcohol and, for our purposes, whether the term "penalties" included "mitigating circumstances". Finding the form sufficient, he opined that "... only by a forced and unnatural reading could the word "penalties" be understood to refer to procedural rights, mitigating circumstances, or evidentiary conclusions." 68 Op. Att'y Gen. 432, 436–37 (1983). The MVA maintains that the opinion's rationale applies equally to the interpretation of the word "sanctions," notwithstanding that, when the opinion was issued, no distinction was made, for purposes of the triggering of the Administration's right to modify a suspension, between refusal of the test and failure of the test. We agree.

To determine legislative intent, "we look first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989). *See also State v. Bricker*, 321 Md. 86, 92, 581 A.2d 9, 12 (1990); *Davis [v. State]*, 319 Md. [56,] at 60, 570 A.2d [855,] at 857 [1990]; *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987). In so doing, we give the language of the statute its ordinary and common meaning. *Bricker*, 321 Md. at 92, 581 A.2d at 12; *Harford County v. University*, 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *NCR Corp. v. Comptroller*, 313 Md. 118, 124–125, 544 A.2d 764, 767 (1988); *Comptroller v. American Satellite Corp.*, 312 Md. 537, 544, 540 A.2d 1146, 1150 (1988); *Jones v. State*, 304 Md. 216, 220, 498 A.2d 622, 624 (1985). Moreover, we approach the analysis of the language from a common sensical, rather than a technical perspective, *see United States v. Universal CIT Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952); [*State v. Owens*], 320 Md. [682] at 688, 579 A.2d [766] at 768 [1990], always seeking to avoid giving the statute a strained interpretation or one that reaches an absurd result. *Baltimore County C.A.U.T. v. Baltimore County*, 321 Md. 184, 203, 582 A.2d 510, 519 (1990); *Bricker*, 321 Md. at 92, 581 A.2d at 12; *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Davis*, 319 Md. at 61, 570 A.2d at 858; *Harford County v. University*, 318 Md. at 529–30, 569 A.2d at 651; *Potter v. Bethesda Fire Department*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987); *Schweitzer v. Brewer*, 280 Md. 430, 438–39, 374 A.2d 347, 352 (1977); *Slate v. Zitomer*, 275 Md. 534, 544, 341 A.2d 789, 795 (1975), *cert. denied sub nom, Gasperich v. Church*, 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976). In fact, "unreasonableness of the result produced by one among alternative possible interpretations of the statute is reason for rejecting that interpretation in favor

of another which would produce a reasonable result." *D & Y, Inc.*, 320 [Md.] at 538, 578 A.2d at 1179–80, quoting 2A *Southerland Statutory Construction,* § 45.12 (4th Ed.1984). When the language is clearly consistent with the apparent purpose of the statute and the result is not absurd, no further research is required. *Kaczorowski,* 309 Md. at 515, 525 A.2d at 633.

Section 16–205.1(b)(1) explicitly details the consequences of which the arresting officer must inform a detained driver: for a refusal to take the test, the Administration shall suspend the driver's license for 120 days or one year, depending upon whether it is a first or subsequent offense, and for failing the test, *i.e.* the results reflect an alcohol concentration of 0.10 or more, it shall suspend the driver's license for 45 days or 90 days, again depending upon whether it is a first or subsequent offense. That section does not refer either to "sanctions" or "penalties"; its heading refers only to "consequences of refusal." Although using the term "sanctions," the sections that follow which address the advice the arresting officer must give a driver all refer back, *albeit* only implicitly, to § 16–205.-1(b)(1).

Subsection (b)(2) addresses, in more detail, what the officer must do upon stopping or detaining a person reasonably believed to be driving or attempting to drive while intoxicated or under the influence of drugs. Paragraph (2)(iii) requires the officer, during the process, to "[a]dvise the person of the administrative sanctions that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.10 or more at the time of testing." Like subsection (b)(1), subsection (b)(2)(iii) requires advice pertaining to the refusal, or failure, of a chemical test. But instead of setting out the precise advice to be given, it refers to its shorthand equivalent, "administrative sanctions."

Similarly, subsection (b)(3)(vii) concerns what the arresting officer must do after issuing an order of suspension. Among the officer's responsibilities is to forward to the

MVA, within 72 hours, along with the confiscated driver's license and a copy of the suspension order, a sworn statement certifying that "[t]he person was fully advised of the administrative sanctions that shall be imposed." Its connection with subsection (b)(1) is quite clear: the "sworn statement from the officer" of which a driver must be informed as part of the subsection (b)(1) advice is the same "sworn statement" mentioned in subsection (b)(3)(vii). It is obvious that the contents of that statement as prescribed by § 16–205.1(b)(3)(viii)3 mirrors the advice required by § 16–205.1(b)(1) to be given.

Should a detained driver request an administrative hearing, § 16–205.1(f)(7)(i)3 provides that one of the only issues to be considered is "[w]hether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed." Subsection (f)(8)(i)3, makes clear that, after the hearing, the driver's license may be suspended only if, *inter alia*, "[t]he police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed." Here again, it is clear that, in each instance, the reference to the "administrative sanctions that shall be imposed" relates back to the advice set out in subsection (b)(1).

The Legislature, concerned that a driver faced with the decision whether to take a test for alcohol concentration or to refuse to take it be aware of certain of the consequences of that decision, explicitly set out in § 16–205.1(b)(1) what a driver must be told upon detention. Interpreting "administrative sanctions" as a shorthand way of referring to that advice, which details consequences, is reasonable and consistent with the purpose of the statute; it certainly does not produce an absurd result or require a strained interpretation. In fact, reading the statute as a whole requires that we reach that conclusion.

Notwithstanding that the term "sanctions" is more expansive than "penalties", there simply is no basis for interpreting the former in the manner urged by Chamberlain. In the case *sub judice*, there is a rather substantial differ-

ence in the consequences of refusing a test and those for taking it and failing. The longer suspension for refusing the test than for failing it provides a significant incentive for a driver to take the test. Advice concerning the *possible* eligibility for modification of a suspension or the issuance of a restrictive license may well provide a further incentive for a driver to take a chemical test, but that is not a sanction. That "sanctions" may include rewards as well as penalties does not mean that every conceivable incentive for action is a reward and, hence, a "sanction," of which the driver must be informed.

■ Aside from § 16–205.1(b)(1), the critical provisions of the statute refer to "administrative sanctions that shall be imposed;" it is only those of which a driver is required to be informed. Mere potential eligibility for modification of suspension or a restrictive license is not an "administrative sanction that shall be imposed." Eligibility for modification of suspension or for a restrictive license becomes reality only if the driver meets the statutory prerequisites, *see* § 16–205.1(m), and, then, only if the ALJ, in the exercise of discretion, finds modification of suspension or issuance of a restrictive license appropriate. *Motor Vehicle Administration v. Lindsay*, 309 Md. 557, 563–64, 525 A.2d 1051, 1054 (1987). It is inconceivable that the Legislature intended "sanctions" to include advice concerning a mere potentiality. A driver who refuses a test or fails it is certain to have his license suspended; the application of § 16–205.1(f)(8)(v) is universal, not dependent upon individual factors. On the other hand, the possibility that the suspension will be modified or a restrictive license issued is only that—a possibility, a mere potentiality. Moreover, whether that possibility will even be an incentive is an inquiry that is person specific; only if the person meets, or arguably meets, the statutory prerequisites will it be an incentive.

Besides the longer suspension period, and its unmodifiability, another difference between the consequences of refusing a test and taking it and failing is that, in the former, the suspension is a matter of public record, that fact is a

part of the driver's driving record, while, in the latter, a first offense is not. *See* § 16–117(b)(2). Therefore, an insurance company may consider the suspension of a driver who refused a test in increasing that driver's insurance premiums or in rejecting or cancelling the driver's insurance policy. On the other hand, it cannot so consider a suspension for a "first offense of driving with an alcohol concentration of 0.10 or more." Md.Code (1957, 1991 Repl.Vol.) Art. 48A, §§ 242(c)(7)(iv), 243D(c), and 244D(e)(4). Despite acknowledging this difference, which must certainly rank with the length of suspension in terms of impact and importance, the appellee does not argue that he should have been informed of this difference. Nor does he provide a reasoned basis for treating it differently than the provisions of § 16–205.1(m). It cannot be doubted that a driver, who is a first offender, will be encouraged to take the test if advised that taking the test and failing precludes the insurance company from using that fact to set, and possibly increase, the driver's premiums, but that refusing to take the test does not.[8]

Furthermore, as we have seen, it is not certain that, upon failure of the test, the driver's suspension will be modified or a restrictive license issued. Thus, any advice that fails to make clear that a reference to modification of suspension or a restrictive license relates to eligibility only is likely to lead to confusion. In point of fact, telling someone who may or may not meet the statutory prerequisites, as encouragement to take the test, that he or she "may be entitled to a modified suspension or restrictive license," may be not simply inaccurate, and affirmatively misleading,[9] it may not be an incentive at all. This is especially likely to be the case

---

**8.** Section 16–205.1(g) pertaining to multiple administrative offenses is another provision which may provide an incentive for taking the chemical test. There is no suggestion by the respondent that the officer has an obligation to inform him as to it.

**9.** It may be that affirmatively to mislead the driver is to violate the driver's right to due process. *See Hare v. State,* 326 Md. 296, 306, 604 A.2d 914, 919 (1992).

when the police officer, not having checked the driving record, tells a person who does not meet any of the statutory prerequisites that he or she may qualify for a modification of suspension or restrictive license if he or she takes the test. And it is also egregious when, though eligible, the person is not absolutely *entitled* to the relief which is the subject of the advice. Thus, it would be impossible to advise a driver without checking the driving record and, if checked, guessing not only as to the driver's eligibility, but also the likelihood that he or she would be favorably considered. For this reason as well "sanctions" can only refer to an outcome that is certain to happen. The suspension of the driver's license must occur whenever the statutory prerequisites have been met, § 16–205.1(f)(8)(i), whether the driver refuses the test or fails the test after taking it. § 16–205.1(f)(8)(v).

When presented with similar issues, courts in our sister states have arrived at consistent results. *Connecticut v. Martin,* 15 Conn.App. 58, 544 A.2d 231, 233 (1988) (statute requiring advice that refusal to take a chemical test will result in suspension of the defendant's license in accordance with certain subsections requires advice only as to the minimum period of suspension); *Abdoo v. Department of Public Safety,* 788 P.2d 1389, 1392 (Okl.App.1990) (advice that refusal to take the test will result in a revocation of driver's license for 180 days or more and failure of the test, revocation for 90 days or more, is sufficient under statute requiring advice that revocation will occur, rather than the period of revocation); *State v. Ramsden,* 117 N.H. 772, 378 A.2d 1370 (1977) (where statute requiring a driver to be told that his license would be revoked automatically for 90 days for refusal to take a breathalyzer test does not require that the driver also be told that, if the person is not found guilty, the Director of Motor Vehicles has discretion to reissue the license before the 90 days expires; "[i]f the legislature had wanted an arrested person to be advised of all possible consequences, it could have so legislated."); *Hess v. Turner,* 129 N.H. 491, 529 A.2d 386, 388 (1987) ("consequences of

refusal" to take a chemical test do not include advice regarding whether an additional penalty will be nonconcurrent); *State v. Jenkins,* 128 N.H. 672, 517 A.2d 1182, 1184 (1986) (Statute which delineates "three requirements relating to the consequences of *refusal* " of a chemical test does not require "that a warning be given as to the potential consequences of *submitting to* the test." (emphasis in original)); *Com., Department of Transportation, Bureau, etc. v. Sinwell,* 68 Pa.Cmwlth. 605, 450 A.2d 235, 236–37 (1982) (Pennsylvania statute only requires the police to warn that refusal to take the test or failure of the test "will" result in suspension or revocation of license); *Whittington v. State,* 184 Ga.App. 282, 361 S.E.2d 211, 212–214 (1987) (advice that refusal to take state-administered test could result in suspension of driver's license for between 6 and 12 months, where the suspension for 12 months pertains only when the charge is homicide by vehicle, is not "unlawful coercion of the arrestee's submission to the State-administered test as the result of the officer's imparting of such information, merely lawful inducement by the officer's informing him of the permissible range of sanctions that the State may ultimately in fact be authorized to impose should he refuse to submit."). *See also State v. Muente,* 159 Wis.2d 279, 464 N.W.2d 230, 231 (App.1990), in which advice that "in addition to other penalties which may be imposed", the driver's operating privilege will be suspended was found to be substantially in compliance with statute requiring a warning that a driver who takes and fails a chemical test, "will be subject to penalties and the person's operating privilege will be suspended under this section." *State v. Lucarelli,* 157 Wis.2d 724, 460 N.W.2d 439 (App.1990).

The cases upon which Chamberlain relies are not to the contrary. *Garrison v. Dothard,* 366 So.2d 1129 (Ala.Civ. App.1979), *Binder v. Commonwealth,* 99 Pa.Cmwlth. 548, 513 A.2d 1105, 1107 (1986), *State v. Wilke,* 152 Wis.2d 243, 448 N.W.2d 13 (App.1989). All stand for the proposition that a license suspension or revocation is inappropriate

when the police officer does not give the driver the advice required by the statute. In each, the statute mandated specific advice which, in each case, the police had not given.

Nor is Chamberlain assisted by *People v. Castle*, 108 Mich.App. 353, 310 N.W.2d 379 (1981). *Castle* stands for the rather unremarkable proposition "that police policy that prohibits a defendant from demanding a chemical test after a prescribed time must first be explained to the defendant, enabling him to make an informed decision." 310 N.W.2d at 381. *Underwood v. Secretary of State*, 181 Mich.App. 168, 448 N.W.2d 779, 781 (1989) is to the same effect.

*Commonwealth v. Gaul*, 135 Pa.Cmwlth. 491, 581 A.2d 261 (1990) and *Cardenas v. Commonwealth*, 136 Pa. Cmwlth. 365, 583 A.2d 42 (1990), were cited by petitioner in the companion case of *Hare v. Motor Vehicle Administration*, 326 Md. 296, 604 A.2d 914 (1992), filed today. They are as inapposite to the case *sub judice* as they were to the facts in *Hare*. They involve the interplay between a detained driver's right, under that State's implied consent law, to consult with counsel, that driver's responsibility for making the decision whether to take a chemical test, and the consequent possibility of confusion that might result. In *Gaul*, for example, the driver refused to take a breathalyzer test, stating that he wanted to speak with his lawyer. After speaking with his lawyer, he approached a second police officer and indicated that he wanted to take the test. That offer was refused as coming too late. 581 A.2d at 262. The Pennsylvania Supreme Court had previously held that, when a detained driver asked to speak with counsel after having been requested to take a breathalyzer test, in addition to the penalties associated with refusal of the test, "the police [must] instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test." *Id.*, quoting *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873, 878 (1989). Because the driver in *Gaul* had not been so advised, the court

affirmed the trial court's determination that the breathalyz-er test was unreasonably withheld. *Cardenas* differs from *Gaul* only in that the driver in that case was advised of his *Miranda* [10] warnings prior to being requested to take the test and prior to his asking to speak to his attorney. 583 A.2d at 43. These cases may be characterized, in short, as standing for the proposition that, when a police officer advises a driver of the consequences of refusing to take a chemical test, the advice must be accurate and include any required disclaimers. *But see Commissioner, Department of Transportation v. March,* 101 Pa.Cmwlth. 171, 515 A.2d 661, 662–63 (1986) (erroneous advice as to the length of suspension for refusal to take a chemical test did not invalidate the suspension, the detained driver having been accurately advised that his refusal of the test would result in a suspension of the license, the specific length of the suspension being extraneous).

We hold that Chamberlain was properly advised of the "sanctions that shall be imposed" and, accordingly, that the trial court erred in ruling otherwise.[11]

### IV.

In its Opinion and Order, the trial court determined: The record established that the administrative hearing was not held expeditiously as required by Maryland An-notated Code, Transportation Article, § 16–205.1(f)(5)(v) (1990 Cum.Supp.) and that the delay amounted to a denial of due process as required by the United States and Maryland State Constitutions.

---

**10.** *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707 (1966).

**11.** The MVA's brief addresses whether advice concerning modification of suspension or issuance of a restrictive license is required by due process. Although we believe the issue has been abandoned by Chamberlain, *see* n. 2, *supra,* we have today held that the advice given by the police officer on the scene fully comported with the require-ments of due process. *See Hare v. Motor Vehicle Administration,* 326 Md. 296, 604 A.2d 914 (1992).

In his Memorandum of Law filed pursuant to Maryland Rule B12, as well as in his brief, Chamberlain asserts that a two hundred twenty-nine (229) day delay from the date of the issuance of the order of suspension and a sixty-nine (69) day delay from the date of the order remanding the case is not expeditious rescheduling. During argument before the circuit court, without referring to any specific delay or postponement, Chamberlain asked the court to rule that the MVA did not comply with the statute because "any delays and postponements [were not] expeditiously scheduled."

Chamberlain was detained on March 17, 1990 for suspected driving while intoxicated. When he refused the officer's request to take a test for alcohol concentration, he was arrested, his license was confiscated, a temporary license authorizing him to drive for 45 days was issued, and he was advised of the procedure for requesting an administrative hearing. *See* § 16–205.1(b)(3). Chamberlain timely requested an administrative hearing, which was conducted on April 26, 1990, thirty-six days after the MVA received the request. *See* § 16–205.1(f)(5)(i).[12] Following the hearing, the ALJ determined, *inter alia*, that Chamberlain refused the test after proper advice, *see* § 16–205.1(f)(8)(i), and, accordingly, suspended his license for 120 days. *See* § 16–205.1(f)(8)(v). Chamberlain filed a timely appeal to the circuit court, raising three of the four issues he argued before the ALJ. His suspension, which had not been stayed

---

12. In his appeal, Chamberlain raised the issue whether the MVA failed to comply with § 16–205.1(f)(5)(i), which provides:
   If the person requests a hearing at the time of or within ten (10) days after the issuance of the order of suspension and surrenders the driver's license or if applicable, the person's commercial driver's license, the Administration shall set a hearing for a date within thirty (30) days of the receipt of the request.
   When the case was remanded, that issue was not addressed. This Court, in *Motor Vehicle Administration v. Shrader*, 324 Md. 454, 469–70, 597 A.2d 939, 946 (1991), determined that postponement, rather than dismissal, of an order of suspension is the proper sanction when the MVA schedules a hearing more than thirty days after receipt of a hearing request. We noted that dismissal is appropriate only where the licensee is prejudiced, *i.e.* when his or her license is suspended while the hearing is untimely scheduled.

after the ALJ's decision, was administratively stayed, pursuant to § 16–205.1(f)(5)(v), on May 3, 1990, seven days after the hearing, and two days after the MVA received notice of the appeal.

Despite a dispute between the parties as to whether the appeal could properly proceed because a segment of the hearing had not been properly recorded—Chamberlain urged that the appropriate remedy was reversal of his license suspension, while the appellant maintained that the appeal should proceed, the legal issues being adequately addressed in the record and preserved for review—, the case was remanded to the MVA for a new hearing on August 24, 1990. The remand hearing was not held until November 1, 1990. The record does not reflect when that date was set. Section 16–205.1(f)(5)(vi) provides that "[t]o the extent possible, the administration shall expeditiously reschedule a hearing that is postponed under this paragraph."

Chamberlain's argument proceeds on two premises: (1) the word "shall", as used in subsection (f)(5)(vi), is mandatory and (2) the objective of the administrative *per se* law is to provide prompt, and certain, sanctions for those who drink and drive. The latter premise is undoubtedly correct. *See Shrader*, 324 Md. at 464–467, 597 A.2d at 944–45. But so is the former. From these premises, Chamberlain argues, relying on *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979), that dismissal is the appropriate sanction for a failure expeditiously to schedule a postponed hearing. This is so, he reasons, because that failure undermines public confidence in the judicial system and thwarts the achievement of the purposes of the law.

To be sure, the definition of postponement, as used in § 16–205.1(f)(5), is exceedingly broad, encompassing changes in a trial date occurring before a hearing has even been scheduled. *See Shrader*, 324 Md. at 467–469, 597 A.2d at 945–46. Thus, to the extent that Chamberlain's argument relates to the six days by which the appellant's scheduling of the initial hearing exceeded the prescribed 30

days, *see* 16–205.1(f)(5)(i), it is obvious that rescheduling was not unduly extended or inexpedient. Postponement, even as interpreted by *Shrader*, is not so broad as to encompass the scheduling of a remand hearing. The statute does not, of course, address the issue or, so far as it appears, contemplate the rescheduling of such hearings. And we are not aware of a requirement in any rule that a remand hearing be scheduled consistent with the same criteria as is applicable to the initial administrative hearing.

The focus of section 16–205.1(f)(5) is the initial administrative hearing. Subsection (f)(5)(i) addresses the initial scheduling upon a driver's request. The effect of postponing that hearing is the subject of subsection (f)(5)(ii) and (iii), while the time for complying with a subpoena is the focus of subsection (f)(5)(iv). What happens when the hearing is postponed beyond the 45th day following the issuance of a temporary license is the subject of subsection (f)(5)(v). Finally the requirement that a postponed hearing be expeditiously rescheduled is addressed in subsection (f)(5)(vi). Rule B13 permits the court "to remand the case to the agency for further proceedings." Such a hearing is not the initiation of an administrative hearing, nor the postponement of it, since it is not a hearing that has been put off, deferred or delayed. *Shrader*, 324 Md. at 468, 597 A.2d at 946. In this case, the hearing was ordered rescheduled by the court, but only for the purpose of creating a record. In short, the remand hearing was not scheduled pursuant to § 16–205.1(f)(5). Nor was the delay in scheduling it a denial of due process.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF JUDGMENT IN FAVOR OF THE MOTOR VEHICLE ADMINISTRATION.

COSTS TO BE PAID BY CHAMBERLAIN.

ELDRIDGE, J., concurs in the result only.